# Marler *v.* The State.

## *Indictment for Murder.*

1. *Organization of grand jury.*—The act of February 13, 1879 (Acts 1878-9, p. 204) regulating the drawing of grand and petit jurors in certain counties therein specified, was not intended to be retroactive, so as to affect the validity of any grand jury which had been drawn under the general law prior to the approval of the act, but which was organized subsequently thereto. Such grand jury was legally organized, though drawn under the general law.

2. *Murder; evidence of motive; when admissible.*—Where a defendant indicted for murder had, prior to the killing, filed a bill in equity against his wife for a divorce, it is competent for the State, for the purpose of showing motive, to prove that the deceased was a material witness for the wife, to whom she had filed interrogatories, but whose deposition had not been taken, and that the cause was pending at the time of the killing; and for this purpose, there being an agreement of counsel that the original papers might be used in place of a certified transcript, the original bill filed by the defendant, the answer of the wife, the interrogatories to the deceased, and a decree dismissing the bill rendered in the cause after the deceased was killed, are admissible in evidence.

2. *Same.*—In such case it is also competent for the State to show, that a few months before the deceased was killed, defendant told witness that he was tired of his wife, that she had not treated him right, and that he was going to get a divorce from her, and that he wanted witness to give him his daughter.

4. *Same.*—It is also competent, in such case, for the State to show, that shortly before the deceased was killed the witness heard defendant say, that the deceased was trying to attend to his business, and that if he did not quit it, he would kill him.

5. *Caution by court to accomplice introduced by the State as a witness, not error.*—Where an accomplice, who had been indicted jointly with the defendant, but as to whom there had been a severance, is introduced as a witness on behalf of the State, it is not error for the court to instruct him as to his rights touching his examination, or to state to him, that his testimony might be used against him, and that the announcement made by the solicitor, that witness' testimony would not be used against him, might not be regarded by the judge before whom he might be tried.

6. *Evidence; testimony of accomplice; conspiracy.*—Where on the trial for murder an accomplice is examined on behalf of the State, and he

[Marler v. The State.]

testifies to a conspiracy between himself and the defendant, compassing the death of the deceased, his testimony as to all facts which he alleges constituted a part of the conspiracy, is admissible.

7. *Evidence corroborative of an accomplice; when admissible.*—Evidence corroborative of the testimony of an accomplice must be confined to points material to the conviction, or to circumstances with which the defendant is in some manner connected, or which affect his identity

8, *Same; when inadmissible.*—An accomplice having testified, that in pursuance of an agreement between himself and the accused, he killed the deceased, and immediately thereafter went to the house of a sister of the deceased, corroborative evidence of the fact that he did go to the house of the deceased's sister, after the commission of the homicide, is inadmissible, it being a collateral fact which, apart from the accomplice's testimony, in no way tended to connect the accused with the crime.

9. *Witness; cross-examination.*—Upon the cross-examination of a witness, especially if that witness be an accomplice, great latitude is given in allowing questions having a tendency to shake his credit by injuring his character, or to prove his accuracy or veracity; and in such matters much is left to the enlightened discretion of the court trying the cause, and its action will not be reviewed, unless such discretion appears manifestly to have been abused.

APPEAL from Crenshaw Circuit Court.
Tried before Hon. JAMES E. COBB.

At the Spring term, 1879, of said court the appellant and one Bose Redman were jointly indicted for the murder of William B. Colquitt. At a subsequent term of the court a severance was granted the State, Redman having been pronounced insane by a jury empannelled under the order of the court, to try that issue; and the appellant was tried alone, was convicted of murder in the first degree, and was sentenced to the penitentiary for life. On an appeal to this court, that sentence was reversed and the cause remanded. *Marler v. The State*, 67 Ala. 55. After the cause was remanded, a second trial was had, and he was again convicted of murder in the first degree and sentenced to suffer the same punishment. On this trial, as shown by the bill of exceptions, the State examined Bose Redman as a witness. Before he commenced testifying the court, in the hearing of the jury, stated to him, that he could testify or not, as he chose, that to testify would not be any advantage to him, when he was put on his trial in the future; that the solicitor had stated to the court, that he would not use the testimony given by him on the present trial against him; that the rule was, that, when a witness testified after being cautioned that he could do so or not, and his testimony could be used against him as a confession; that the judge then presiding would not preside at his trial, and the court could not say, whether the announcement made by the solicitor would be regarded by the judge before whom he was tried, but presumed that it

[Marler v. The State.]

would. The appellant "objected to the court stating to the witness what is above set forth as to what the court that tried him would probably do, and that the solicitor had given his assurance " that he would not use the witness' testimony against him, and reserved an exception thereto. The witness then testified, that on the night of the 16th of August, 1876, he killed the deceased, and that he was hired to do so by the appellant ; that the appellant told witness that he would tell his sister to leave the door and window of her room open on that night, so that witness, after he had killed the deceased, could go to appellant's sister, and she could assist him by giving him rations, until appellant could get back from his uncle's, whither he said he would go, so that he could prove himself innocent, in the event he was charged with the crime ; and that when he returned he would furnish witness with what provisions he needed until witness could leave the country. The witness further testified, that after he killed the deceased, he went directly to the house of the appellant's sister, and found the door and window of her room open. The appellant moved to exclude so much of the witness' testimony as related to what the witness did after the killing, but the court overruled his motion and he excepted. On cross-examination this witness was asked by appellant, whether he was not making his arrangements to leave the country under a suspicion of sheep-stealing, at the time the deceased, was killed, but on objection made by the State, the court refused to allow the witness to answer the question, and the appellant excepted. The State also examined as witnesses the appellant's sister, Catherine, and Mrs. Marler, his mother, both of whom testified, against the appellant's objection, that Bose Redman came to Catherine's room on the night the deceased was killed, and told them that he had killed him ; and the appellant separately excepted.

The father of Bose Redman was also examined on behalf of the State, who testified, that a few months before the deceased was killed, the appellant told him, that he was tired of his wife, that she had not treated him right, and he was going to get a divorce from her, and he wanted witness to give him his daughter ; that witness told him no man in his condition could get his daughter. After showing on cross-examination of this witness, that the appellant had never "courted" his daughter, and "never said anything to him afterwards about it," the appellant moved to exclude from the jury all of said witness' testimony, but the court overruled the motion and the appellant excepted. One Gilchrist was also examined on behalf of the State, who testified, that shortly before the deceased was killed, he heard the appel-

[Marler v. The State.]

lant say, that the deceased was trying to attend to his business, and that if he did not quit it, he would make him ; and that on another occasion appellant came to witness' house and said he was going to try and get a divorce from his wife, and wanted his advice about it ; that he told appellant to let the matter alone, that his wife was a good woman, to which the appellant replied, that she had not done right ; that witness again told him to let the matter alone, that appellant " would fool along until they got him in jail," to which he replied " who, they wouldn't, but that he would get some of them in jail." The appellant moved to exclude the testimony of this witness " as to all of the latter conversation " with him, but the court overruled his motion, and he excepted.

The State proved and offered to read in evidence a bill filed in the Chancery Court of Coffee county by the appellant against his wife, seeking a divorce, and the wife's answer, and a set of interrogatories filed by the wife to the deceased in that cause, and also the decree of that court dismissing appellant's bill. The bill, answer and interrogatories were filed before the deceased was killed. but the decree was rendered afterwards. These papers were offered in connection with an agreement of counsel executed several terms prior to the trial, that the papers should " be used as evidence on the trial" of this cause "the same as a certified transcript could be used in this case ;" and also for the sole purpose of showing that said suit was pending at the time the deceased was killed, and that the deceased was a witness for the wife of appellant. The appellant separately objected to the introduction of these papers, but the court overruled his objections, and allowed the State to read the papers in evidence, and he separately excepted. It was also shown by the State, that a commission had been issued on the interrogatories to the deceased in the divorce case, and had been placed in the hands of a commissioner, who had agreed with the appellant upon the time and place of taking the deceased's deposition, the time agreed on being the week following the night the homicide was committed.

Other evidence was introduced, and other exceptions reserved by the appellant to the rulings of the court on the admissibility of evidence, and to the refusal of the court to give to the jury charges requested by him ; but as they were not passed on by this court, it is unnecessary to state them. In this court the appellant insisted that the grand jury which returned the indictment was illegally organized ; but the point made by him is sufficiently stated in the opinion.

JNO. D. GARDNER, for appellant.

[Marler v. The State.]

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—The grand jury, which found the indictment in this case, was a legally constituted body, we think, notwithstanding the act of February 13, 1879, which was passed to regulate the drawing of grand juries in the several counties specified in the act, among which is included the county of Crenshaw.—Acts 1878–79, p. 204. This act reduced the number of persons to be drawn, for organizing grand juries in these several counties, to fifteen, the general law in the Code requiring eighteen to be drawn for such purpose.—Code, 1876, § 4738. It was not intended, however, to be retroactive in its operation, but prospective only. It had reference only to such drawing of grand jurors as might take place subsequent to the passage of the act in the designated counties. The grand jury here was drawn before this date, and in accordance with the requirement of the law governing such transactions at the time it was done. It was, therefore, unaffected by the special act in question.

The court below properly refused to exclude the testimony of the elder Redman, detailing a conversation between the defendant, Marler, and himself in reference to Marler getting a divorce from his wife, and desiring to marry witness' daughter. This evidence tended to prove an eagerness on defendant's part to obtain the divorce, and, therefore, to show a motive for killing deceased, who was a witness in the divorce proceedings, and was supposed to be hostile to defendant's purposes.—*Marler v. The State*, 67 Ala. 55; *Hall v. The State*, 40 Ala. 698; *Johnson v. The State*, 17 Ala. 618.

The testimony of the witness, Gilchrist, was properly admitted. The first portion of it was an implied threat against the deceased, and the latter part tended to prove the existence of a motive for killing him, for the like reason assigned in reference to the evidence given in by Redman, to which we have above alluded.

The record of the divorce proceedings, pending between defendant and his wife, was competent evidence bearing on the question of motive. Their operation was properly limited by the court to showing that the suit was pending and undismissed at the date of Colquitt's death, and that the latter was a material witness in the cause. It was also competent to substitute the original papers for the record by written agreement of the counsel representing the State and the prisoner, as appears to have been done.

We see nothing objectionable in the instructions given by the presiding judge to the witness, Bose Redman, who, though

[Marler v. The State.]

a confessed accomplice, was permitted to testify against the defendant in behalf of the State.

It may be considered the established practice in this State, as it was generally at common law, in proper cases and under proper precautions, to permit accomplices to testify against their associates in crime. It is usually considered as a question for the court to decide, on motion of the prosecuting officer, whether or not to permit it in a particular instance. The practice in England seems to have been, as it is with us, to allow the matter to be determined by the court, in its discretion, as may best subserve the purposes of justice. Where accomplices do testify, on application of the State's solicitor to the court, it is usually done under the implied understanding that if they testify truly and fairly, they shall not be compelled to suffer by reason of their confessed guilt. 1 Bish. Cr. Prac. §§ 1075–76; 1 Greenl. Ev. § 379; Code, 1876, § 4893; Whart. Cr. Ev. § 439.

The testimony of Redman was, of course, admissible as to all facts which he avers, constituted a part of the alleged conspiracy between himself and the defendant, compassing the death of the deceased. It was competent, therefore, for him to testify to the alleged fact that it was agreed between them that he should go, immediately after the commission of the homicide, to the house of Catherine Marler, the sister of the defendant. We think the court erred in admitting corroborative evidence to prove that Redman did go to Miss Marler's residence pursuant to the alleged agreement. This was, apart from the testimony of the accomplice, a totally irrelevant fact, unless the witness himself had been on trial, and it had nothing to do with the issues in this case, unless there was some evidence tending to connect the defendant with it. We think that the law requires all corroborative evidence to be confined to points material to the conviction, or to circumstances with which the defendant is in some manner connected, or which affect his identity. As was said by Lord ABINGER, in *Regina v. Farler*, 8 C. & P. 106, "A man who has been guilty of a crime himself will always be able to relate the facts of the case, and if the confirmation be only of the truth of that history, without identifying the persons, this is really no corroboration at all. If a man were to break open a house, and put a knife to your throat, and steal your property, it would be no corroboration that he had stated all the facts correctly; that he had described how the person did put the knife to the throat, and did steal the property; it would not at all tend to show that the party accused participated in it."—3 Russell on Cr. (9th Ed.) 603.

The testimony of Mrs. Marler, and of her daughter, Cath-

[Marler v. The State.]

erine Marler, introduced to corroborate Redman's statement that he went to the house of the latter after the killing, had no necessary connection with the guilt of the defendant; *per se* it was irrelevant, and the proof of its correctness would not conduce to prove the guilt of Marler, though it might, the guilt of Redman, of which latter fact there was no pretense of denial by any one.

The statute provides that a "conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense ; and such corroborative evidence, if it merely shows the commission of the offense, or the circumstances thereof, is not sufficient."—Code, 1876, § 4895.

The statute only declared what was the strong tendency of judicial decision before its passage. Its purpose, we think, was to require all corroborative evidence either to relate to the actual commission of the offense, or the circumstances thereof, or else to such portions of the narrative of the accomplice as the evidence may tend to show that the defendant had some complicity or connection with. It is clear that the corroboration of collateral facts in the statement of an accomplice is no corroboration at all, so far as concerns the defendant, unless he is shown by other evidence than that of the accomplice to be connected in some manner with such facts. Suppose, for example, the case of one indicted for murder by poisoning the deceased through the use of arsenic, an accomplice in the crime testifies that he himself purchased the poison, by request of the defendant, from a particular druggist, and on a certain day, and, perhaps, at a stated hour and price. The fact being uncontroverted, except as to the defendant's complicity, how could it be said that proof by the druggist of the purchase by the witness, in the quantity and at the time and price stated, would in any sense be corroborative evidence. It is presumable that the accomplice, if he did the deed, can narrate the circumstances and the manner of its commission. Unless his statement as to such collateral facts is disputed, it needs no cororboration, and the introduction of a score of witnesses before a jury testifying to the truth of such uncontroverted facts, with which the defendant has no connection, would tend only to mislead and confuse, in proportion, perhaps, to the number introduced.—1 Bish. Cr. Proc. § 1081, (*note* 4) ; 1 Best, Ev. § 171 ; 1 Greenl. Ev. (Redf. Ed), § 381, *note* 3 ; Roscoe's Cr Ev. p. 120 ; 3 Russell on Cr. (9th Ed.) p. 604.

It is further urged by appellant's counsel that the court below erred in sustaining the objection to the question propounded by the defendant, on cross examination, to the wit-

[Marler v. The State.]

ness Redman, as to whether, "at the time Colquitt was killed, he was not making his arrangements to leave the country under the suspicion of sheep-steeling." If the first part of the interrogatory had been propounded alone, as to the witness' preparations to leave the country, it would be indisputably free. from all objection, especially if shown to have connection with other reasons than his complicity with the crime under investigation. Redman had sworn that it was part of the alleged conspiracy between defendant and himself that he (Redman) should immediately leave the country after the killing, and any proof showing that he was to leave from other motives would tend to discredit him. The chief difficulty arises from the latter part of the question, which has reference to a mere collateral fact and tends to degrade the witness.

The rule is, that upon cross-examination, especially of an accomplice, great latitude will be allowed in order to probe his accuracy, veracity, or credibility. So likewise as to questions having a tendency to shake his credit by injuring his character.—1 Whart. Cr. Ev. § 444; Stephens' Dig. Law Ev. 185. It is no objection to the question, that it would expose the witness to disgrace, not amounting to crimination. And, as said by Mr. Wharton, "while courts have refused to permit a witness to be examined as to *past* irrelevant misconduct, yet questions have been permitted tending to search his conscience as to such *recent* infamy as leaves his testimony entitled to little respect."—1 Whart. Law Ev. §§ 544, 541. While the authorities on this point are not perfectly settled, we incline to the view, that, where the question propounded has reference to some collateral fact, tending merely to degrade the character of the witness, and not exposing him to penalty or prosecution, but yet tending to impeach his credit as unworthy of belief, great liberality should be extended by the *nisi prius* courts in favor of the allowance of the question. Yet much is to be left to the enlightened discretion of the court, in such matters, and its action will not be reviewed unless such discretion appears manifestly to have been abused. The tendency of modern practice seems favorable to great latitude, however, in this regard. 1 Greenl. Ev. § 454-5 ; Clark's Man. Cr. Law, § 2454; *Campbell's case*, 23 Ala. 44 ; *Childs's case*, 58 Ala. 349 ; *People v. Manning*, 48 Cal. 335 ; 2 Phil. Ev. 422; Clark's Cr. Dig. § 999 ; *Halls' case*, 40 Ala. 698; 1 Whart. Law Ev. § 528.

For the error of the Circuit Court in admitting the testimony of Mrs. Marler and of Catherine Marler, as above discussed, its judgment is hereby reversed and the cause is remanded for further proceedings. In the meanwhile, the

prisoner will be retained in custody until discharged by due course of law.