[King v. The State.]

# King *v.* The State.

## *Indictment for Murder.*

1. *Exemption of "State troops" from service as jurors; proof of membership.*—Exemption from jury duty, granted by statute to the members of the "Alabama State troops" (Code, § 174), is conclusively proved by the certificate of the commanding officer of the particular company; but the claim of exemption is addressed to the court, and may be established by the statement of the person claiming it on his *voir dire,* if not controverted.

2. *Evidence as to violent character of deceased.*—On a prosecution for murder, evidence as to the character of the deceased for turbulence or violence is not admissible for the defendant, unless the question of self-defense is involved, or circumstances are shown which tend to mit'gate the degree of the offense on the ground of provocation; and. this question being addressed to the court at the time the evidence is offered, the appellate court, in revising its exclusion, will not consider evidence subsequently introduced, for the purpose of imputing error.

3. *Drunkenness as excusing or mitigating homicide.*—Drunkenness on the part of the defendant, at the time of the commission of the homicide, may reduce the offense from murder to manslaughter, if shown to be so excessive as to render him incapable of entertaining or forming the design to take life—that is, incapable of rational action; and when there is any evidence showing that he was drunk at the time, he has the right to have the jury decide as to its degree and effect.

FROM the Circuit Court of Colbert.

Tried before the Hon. HENRY C. SPEAKE.

The indictment in this case, which was found in September, 1888, contained but a single count, which charged " that Ross King, Josiah King, George Kelly and Henry King, unlawfully and with malice aforethought killed John Lilly, by striking him with a piece of iron, or by striking him with rocks." Ross King, being on trial alone, pleaded not guilty, but was convicted of murder in the second degree, and sentenced to the penitentiary for the term of forty years. On the trial, as appears from the bill of exceptions, the evidence showed that the homicide was committed one evening about sunset, or later, in the town of Leighton, just in front of the . deceased's store or shop, where he sold whiskey and other things ; that quite a crowd of persons was present, composed of white men and negroes, all of whom were drinking; that the deceased, who was drunk, came to the door, and boasted that he " was the best man in town," to which the defendant made some reply ; that they thereupon engaged in a friendly scuffle, and both fell to the ground, the defendant on top; that a by-

[King v. The State.]

stander pulled him off, and told him they had better quit before they got into a fuss, but each of them said he was not angry; that the deceased, as he rose, cut or struck at the defendant with a knife, but the defendant ran or dodged around the corner of the house; that the crowd commenced throwing stones, one of which struck the deceased, who then turned towards the crowd, just as the defendant came from around the corner of the house, and started towards him; that a stone struck the deceased, and felled him to the ground; that the defendant then struck him once or twice, with a piece of iron which he had picked up; that the skull of the deceased was fractured, and he died within an hour.

The defendant requested the following charges in writing, and duly excepted to their refusal: (1.) "The jury can take into consideration that the defendant was drunk, if the evidence shows that he was drunk, by way of explaining his conduct on the hypothesis of the provocation, rather than of malice, because a man's passions are more easily excited when he is drunk, than when he is sober." (2.) "Drunkenness does not palliate crime, but it may be received in evidence to repel the existence of premeditation, deliberation and malice, necessary to constitute murder in the first degree." (3.) "Intoxication may render the accused incapable of forming or entertaining the specific intent which is a material ingredient of the crime of murder." (4.) "Voluntary drunkenness may sometimes operate to rebut the existence of malice, so as to reduce the grade of homicide, or other crime of which malice is a necessary ingredient." (5.) "A man may, in many instances, be so drunk as to be incapable of forming or entertaining any specific intention at all." (6.) "Whether the defendant, at the time of the homicide, was so drunk as to be incapable of forming an intent, is a conclusion to be drawn by the jury from all the evidence before them."

Other exceptions were reserved by the defendant, to rulings shown by the opinion of the court.

JACKSON & SAWTELLE, for appellant.—(1.) Garland ought not to have been excused as a juror, on his own statement alone. His right to exemption ought to have been proved, as the statute provides (Code, § 174), by the certificate of his commanding officer; or it ought to have been shown otherwise that he was in good standing, and had not lost his exemption by absence from four successive drills.—*Phillips v. State,* 68 Ala. 569; 12 Amer. & E. Encyc. Law, 327. (2.) Evidence of the character of the deceased for violence ought to have been admitted.—*Tesney v. State,* 77 Ala. 33; *De Arman v.*

[King v. The State.]

*State*, 71 Ala. 351; *Franklin v. State*, 29 Ala. 14. (3.) The charges asked should have been given.—*Cleveland v. State*, 86 Ala. 10; *Ford v. Slate*, 71 Ala. 385; *Tidwell v. State*, 70 Ala. 33; *Morrison v. State*, 84 Ala. 405; 1 Curt. C. C. 1; 1 Russ. Crimes, 1, 2; 1 Lead. Crim. Cases, 87; *Armour v. State*, 63 Ala. 173.

WM. L. MARTIN, Attorney-General, for the State.—(1.) Garland was properly excused from jury duty.—Code, § 4301; *Phillips v. State*, 68 Ala. 469; *Dunlap v. State*, 76 Ala. 460. (2.) Evidence as to the character of the deceased was not admissible when offered.—*Lang v. State*, 84 Ala. 1; *Roberts v. State*, 68 Ala. 156; *Bowles v. State*, 58 Ala. 335; *Eiland v. State*, 52 Ala. 322; *Franklin v. State*, 29 Ala. 14; *Williams v. State*, 74 Ala. 18. (3.) The charges asked were properly refused.— *Williams v. State*, 71 Ala. 1; 4 Amer. & E. Encyc. Law, 712; *Bullock v. State*, 13 Ala. 413; *Mitchell v. State*, 60 Ala. 26; *Tidwell v. State*, 70 Ala. 46.

CLOPTON, J.—Garland, whose name appears on the special *venire*, having been drawn, claimed exemption from jury duty under section 174 of the Code; and after being sworn and examined, was excused and discharged, against the objection of defendant, upon his own statement, that he was a member of the Sheffield Light Guards, and belonged to the Alabama State troops. The section declares : "Every officer, commissioned or non-commissioned, musician and private, of the Alabama State troops, is exempt from jury duty during his membership; and the commanding officer of each company shall furnish each member with a certificate of membership, signed by such commanding officer, which shall prove such exemption in any court; but such certificate shall be revoked when the holder is absent from four successive drills or parades, without good excuse." It is not controverted that Garland was entitled to the exemption, and that the court was without power to compel him to serve as a juror, if shown by competent and sufficient proof that he was a member of the State troops. The exception goes to the sufficiency of his own statement, to prove that he comes within the exemption. The contention is, that, under the statute, the only evidence competent and sufficient for this purpose is the certificate of the commanding officer.

The statute confers the right or privilege of exemption on the ground of membership, and during the membership, in consideration that a member of the State troops owes duties to the public which he may, at any moment, and in a sudden

emergency, be called upon to discharge. The privilege does not depend upon obtaining the certificate of the commanding officer, but upon the fact of membership. Should the commanding officer willfully refuse, or negligently fail to furnish such certificate, the member is not thereby deprived of his right to the exemption. The question, whether a person drawn as a juror comes within the exemption, is for the determination of the court; and in its ascertainment, the ordinary practice is, to examine the person claiming the exemption, on his *voir dire,* and to receive his own statement as *prima facie* evidence, which, if not controverted, is usually regarded sufficient to justify his excuse and discharge. The statute contains no words of negation, and it can not be implied from the terms of the provision itself, requiring the commanding officer to furnish each member with a certificate of membership, or from the context, that it was intended to make such certificate the exclusive means of proof. Such provision is cumulative, its special purpose and office being to provide an official instrument, "which shall prove such exemption in any court"—which shall be conclusive evidence. It does not displace or abrogate other kinds of proof, deemed competent and sufficient in general practice, in cases of claims of exemption from jury duty. The case of *Phillips v. State,* 68 Ala. 569, is not in conflict with this view. In that case, the exemption was claimed under a statute exempting the members of incorporated fire-companies. The persons claiming exemption were excused upon their mere statement of being *firemen.* This was held to be insufficient, on the ground that they might have been firemen, and yet not members of an *incorporated* fire-company. Another person proved his membership by his own statement, accompanied by the charter of the company exempting its members from jury duty; and this was held sufficient.

The character of the deceased for turbulence, violence, or revengefulness, is only admissible as evidence for the accused, in cases of homicide, when it tends to qaulify or explain the conduct of the deceased, or to illustrate the circumstances attending the homicide, and which, when so qualified, explained, or illustrated, tend to produce in the mind of the accused a reasonable belief of imminent danger, or to aggravate the conduct of the deceased into a provocation mitigating the offense to a lower degree.—*Franklin v. State,* 29 Ala. 14; *Lang v. State,* 84 Ala. 1; *Rutledge v. State,* 89 Ala. 85. The preliminary question, whether the conduct of the deceased, and the circumstances shown by the testimony, are such as to authorize the admission in evidence of his character, it is the province and duty of the court to determine. Before the court can be

[King v. The State.]

put in error, the record must disclose testimony *prima facie* bringing the admissibility of the evidence within the rule stated above.—*Quesenberry v. State*, 2 S. & P. 308.

The evidence as to the character of the deceased was offered on the cross-examination of the second witness examined on the part of the State. The testimony up to this time showed substantially the following facts, briefly stated : Deceased and defendant were engaged in a friendly scuffle ; and when the scuffle ceased, deceased cut or struck at defendant, who turned and ran from him around a small house, followed by deceased. At this moment, the crowd, a short distance from them, began to throw stones, one of which struck deceased, and felled him. He immediately recovered, and went staggering toward the crowd. At this moment defendant re-appeared, and struck deceased with a rock, or a piece of iron, which broke his skull, death resulting in a short time. There is nothing in these facts which, if qualified or explained by the character of deceased, though turbulent or violent, could tend to afford defendant any reasonable ground to believe he was, at the time, in peril. On the contrary, if the facts be as testified to by the only two witnesses who had been then examined, the voluntary return of defendant to where deceased was, tends to show that he did not apprehend serious harm. The evidence of deceased's character was not admissible, upon the testimony introduced prior, and up to the time it was offered. Whether or not admissible upon the testimony subsequently offered, it is unnecessary to decide; for we can not consider, for the purpose of putting the court in error, as to a ruling not erroneous when made, any evidence subsequently introduced. If defendant supposed that the subsequent testimony rendered the character of deceased admissible, he should have re-offered the evidence.—*Hill v. Helton*, 80 Ala. 528.

Defendant asked several charges relating to the matter of drunkenness, which were refused by the court. While drunkenness, voluntarily produced, does not, of itself, excuse or palliate an offense, it may be so excessive as to paralyze the mental faculties, rendering one incapable of premeditation, or of entertaining malice, and may, in extreme cases, reduce a homicide from murder to manslaughter. But, to produce this effect, it must be of such character and extent as to render the accused incapable of entertaining or forming the design to take life—incapable of rational action. These principles have been so repeatedly and lately declared by this court, that it is only necessary to state them.—*Mooney v. State*, 33 Ala. 419 ; *Ford v. State*, 71 Ala. 385; *Morrison v. State*, 84 Ala. 405.

[King v. The State.]

Tested by these principles, the first charge requested by defendant does not state a correct legal proposition. A charge substantially similar was held to be erroneous in *Morrison v. State, supra.* Also, the first and second charges are argumentative in their nature, and for this reason, if no other, properly refused. But the third, fourth and fifth are in accord with the principles we have stated. They were asked for the purpose of obtaining instructions as legal propositions, preliminary and leading to the request to give the sixth charge, which is, "Whether the defendant, at the time of the homicide, was so drunk as to be incapable of forming an intent, is a conclusion to be drawn by the jury from all the evidence before them." The charge is correct in asserting that whether the intoxication of appellant was so great as to render him incapable of forming a design or intent was a question exclusively for the jury.—*Armor v. State,* 63 Ala. 173. We presume the court refused the charge on the theory, that there was no evidence on which to base it. It is true, a refusal to give a charge, though it may state a correct legal proposition, is not a reversible error, unless it affirmatively appears there was evidence tending to prove every fact it supposes. But, when there is evidence so tending, though the court may consider it slight and insufficient, the question should not be taken from the jury.

There was evidence that defendant and deceased were both drunk, and that the crowd present were either drunk or drinking. The existence of malice was material in determining the degree of the homicide, whether murder or manslaughter. The inquiry as to its existence involved "an inquiry into the state of the mind of the accused at the time of the killing; and of consequence, it is proper to inquire whether he was then drunk or sober; and if drunk, whether the intoxication rendered him incapable of premeditation and deliberation," or of forming a design or intent to take life.—*Tidwell v. State,* 70 Ala. 33. It being shown that defendant was drunk at the time of the homicide, he had a right to have the jury instructed as to the law in such cases, and to have them pass upon the sufficiency of the evidence to prove that his drunkenness was so excessive as to preclude the entertainment of malice.

Reversed and remanded.