# Parham *v.* The State.

## *Murder.*

(Decided June 20, 1906.  42 So. Rep. 1.)

1. *Criminal Law; Appeal; Record.*—The record not showing the difference between the copy of the indictment served upon the defendant, and the true indictment, defendant's objection to being put upon trial on the grounds that no true copy of the indictment had been served on him, cannot be reviewed, on appeal.

2. *Same.*—The record failing to show what answer was expected to a question to which an objection was sustained, such ruling cannot be reviewed, upon appeal.

3. *Same; Appeal; Harmless Error; Objection to Question.*—Where the answer to the question was contained in the subsequent testimony of the witness, it was harmless error to sustain an objection to the question when asked.

4. *Same; Review; Rulings on Evidence.*—It not plainly appearing from the question that evidence sought to be elicited by it was relevant and material, in order to have a review of the sustaining of objection to the question, it should appear of record what answer was expected.

5. *Same; Harmless Error; Form of Question.*—A witness having stated in detail what defendant said, without objection, any-

thing objectionable in the form of a question about threats made by defendant against deceased was harmless error.

6. *Same; Evidence; Opinion.*—It is objectionable as calling for an opinion, to ask whether deceased was afraid to go about alone at night.

7. *Same; Evidence; Hypothetical Questions.*-Where the question was not confined to the pool of water testified about, and the conditions of the indefinite pool were not shown to be the same as the pool in testimony, a hypothetical question as to a pool of water becoming colored is objectionable.

8. *Witnesses; Examination; General Questions.*—A question, referring to a time a week before the alleged homicide, "what did defendant say to deceased when he left her that morning," being so general that irrelevant evidence would be responsive to it, was objectionable.

9. *Same; Credibility; Materiality of Evidence.*—It being shown without dispute that a witness was in the employ of the railroad company near whose tracks the body was found, it was immaterial, as affecting his credibility on account of bias or interest, whether he voluntarily ascertained the facts as to the appearance of the body about which he testified, or whether he ascertained them as part of his duty as a railroad employe to get up evidence where a body was found on or near the track.

10. *Witnesses; Credibility; Evidence.*—The fact that a witness who testified to threats made by defendant against deceased, was a member of the coroner's jury which investigated the case, and said nothing about his knowledge of such threats while on the jury, although the jury was charged to look up all the evidence bearing on the case, was not additional circumstance of a discrediting nature to the evidence allowed to be introduced that he knew of such threats while a member of such jury and said nothing about it, was immaterial and properly disallowed.

11. *Homicide; Malice; Evidence.*—For the purpose of showing a disposition on part of defendant to harm deceased, and also to show malice, it was competent to permit testimony that about a week before the homicide defendant said that if deceased did not quit following him around he was going to kill her.

12. *Same; Threats; Proof of Corpus Delicti.*—If there is sufficient evidence of the corpus delicti to require a submission of that question to the determination of the jury, threats made by defendant against deceased become admissible.

13. *Same; Evidence; Instructions at Inquest.*—On a trial for murder instructions given the jury at the inquest are immaterial and not admissible.

14. *Same; Degrees; Instructions.*—It is the duty of the court, under § 4857, Code 1896, to instruct the jury with respect to the de-

[Parham v. The State.]

grees of murder, and it is not error for the court to do so on the ground that, under the evidence, the defendant was guilty of murder in the first degree, or nothing.

15. *Same; Means of Killing; Instructions.*—Where one count of the indictment alleged that the means by which the murder was committed was unknown to the grand jury, a charge that if the jury believed from the evidence beyond a reasonable doubt that deceased came to her death at the hands of the defendant, it does not matter what sort of weapon she was killed with, or how it was used, defendant would be guilty under the count, was proper.

16. *Criminal Law; Instructions; Reasonable Doubt.*—Charges that if the jury believe from the evidence beyond a reasonable doubt that defendant is guilty; though they also believe it is possible he may not be guilty, they must convict; and that the doubt to warrant an acquittal must be actual and substantial, not a mere possible doubt, are correct and properly given.

17. *Same.*—When a charge is correct in stating that "beyond a reasonable doubt" does not mean absolute certainty, it is not rendered so erroneous as to work a reversal, by the added assertion that there is no such thing in human affairs as absolute certainty.

18. *Same.*—A charge asserting that if the jury are reasonably doubtful as to the proof of any material allegation in the indictment they must acquit, is erroneous and properly refused.

19. *Same.*—A charge asserting that if, after considering all the evidence, the jury have a fixed conviction of the truth of the charge, that they are satisfied beyond a reasonable doubt, and it is their duty to convict, is correct.

20. *Same; Instructions; Alibi.*—A charge asserting that where a defendant attempts to prove an alibi the burden is on him to successfully prove it, is a correct statement of law.

21. *Same; Instructions; Disregarding Defendant's Testimony.*—An instruction is proper that asserts that if the jury believe from the evidence that defendant has wilfully sworn falsely as to any material matter, they may, in their discretion, disregard all of his testimony.

22. *Same; Repetition of Instructions.*—Where a proposition has been clearly stated in a written charge given, it is not error to refuse charges which are substantial duplicates thereof.

23. *Same; Instructions; Degree of Proof.*—A charge asserting that there should not be a conviction unless, to a moral certainty, the evidence excludes every other reasonable hypothesis than that of guilt of defendant, and no matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done the act, then the guilt of defend-

ant is not shown by that full measure of proof that the law requires, is erroneous as requiring a too high degree of proof.

24. *Same; Instructions; Circumstantial Evidence.*—A charge asserting that one accused of crime should not be convicted on circumstantial evidence, unless such evidence shows, by a full measure of proof, beyond a reasonable doubt, that defendant is guilty, and such proof is alwals insufficient unless it excludes to a moral certainty every reasonable supposition or hypothesis arising out of all the evidence, but that cf defendant's guilt; and no matter how strong the circumstances if they can be reconciled by any theory, generated by all the evidence that some one else may have committed the crime, then defendant is not shown to be guilty by that full measure of proof that the law demands, requires a too high degree of proof, and is properly refused.

25. *Same; Instructions; Invading Province of Jury.*—Charges asserting that there is not sufficient evidence of certain facts, and that there is no evidence before the jury that deceased was murdered, was properly refused as invasive of the province of the jury.

26. *Same; Incomplete and Misleading Instructions.*—A charge asserting that before the jury are authorized to convict, the hypothesis should follow naturally from the evidence, and be consistent with all of it, being incomplete and misleading in that it is not stated what hypothesis is referred to, was erroneous and properly refused.

27. *Same; Instructions; Degree of Proof.*—A charge asserting that before defendant can be convicted the evidence should be as strong as the positive testimony of one credible witness, who proves beyond all reasonable doubt the guilt of defendant, is erroneous.

28. *Same; Argumentative Instructions.*—A charge which asserts that the law says it is better that the guilty go unpunished, than that the innocent, or those whose guilt is not shown beyond a reasonable doubt, should be punished, besides being erroneous, is argumentative.

APPEAL from Lawrence Circuit Court.

Heard before HON. D. W. SPEAKE.

The defendant was indicted for the murder of his wife, Murzy Parham, convicted of murder in the second degree and sentenced to the penitentiary for 20 years. It does not appear from the record what the difference between the copy of the indictment served on defendant and the

original indictment consisted in. Motion to quash the
venire and the objection of the defendant to being put on
trial is stated in the record to be that no true copy of the
indictment was served on defendant. The facts relative
to the offense are sufficiently stated in the opinion. In
his oral charge, the court defines murder in the first de-
gree and then states to the jury that he would also define
murder in the second degree as in their discretion they
might, under the testimony, find the defendant guilty of
murder in the second degree. The defendant objected to
the court's defining murder in the second degree and to
the statement of the court that the jury might in their
discretion, under the evidence in the case, find the defend-
ant guilty of murder in the second degree, and insisted
that there were no extenuating circumstances and that
the defendant was guilty of murder in the first degree or
nothing. At the request of the state, the court gave the
following written charges: "(A) I charge you, gentle-
men of the jury, if you believe from all the evidence be-
yond a reasonable doubt that the defendant is guilty,
though you also believe it is possible he is not guilty, you
must convict him. (B) I charge you, gentlemen of the
jury, that the doubt must be actual and substantial, and
not a mere possible doubt, because everything relating
to human affairs and depending on moral evidence is
open to some possible or imaginary doubt. (C) I charge
you, gentlemen of the jury, that if you believe from the
evidence in this case beyond a reasonable doubt that
Murzy Parham came to her death at the hands of defend-
ant, it matters not what sort of weapon she was killed
with, or how the weapon was used, under the first count
of the indictment. (D) I charge you, gentlemen of the
jury, that the words 'reasonable doubt' do not mean abso-
lute certainty; there is no such thing as absolute certain-
ty in human affairs. (E) I charge you, gentlemen of
the jury, that when a defendant attempts to prove an
alibi the burden of proof is upon him to prove it success-
fully. (F) I charge you, gentlemen of the jury, that if
after considering all the evidence you have a fixed con-
viction of the truth of the charge, you are satisfied be-
yond a reasonable doubt, it is your duty to convict the

defendant. (G) I charge you, gentlemen of the jury, that if you believe from the evidence that the defendant has willfully sworn falsely as to any material matter in this case, you may, in your discretion, disregard his whole testimony."

The defendant requested the court ,in writing, to give the following charges which were refused: "(4) I charge you, gentlemen of the jury, that the true test of the sufficiency of circumstantial evidence is whether the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt. If it does not, there should be no conviction. (6) I charge you, gentlemen, that the humane provision of the law is that there should not be a conviction upon the evidence unless, to a moral certainty, it excludes every other reasonable hypothesis than that of the guilt of the accused. No matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by that full measure of proof that the law requires. (37) I charge you, gentlemen of the jury, that the humane provisions of the law are that one charged with the crime should not be convicted on circumstantial evidence unless it shows by a full measure of proof, beyond a reasonable doubt, that the defendant is guilty. Such proof is always insufficient unless it excludes, to a moral certainty, every reasonable supposition or hypothesis arising out of all the evidence but that of the of the defendant's guilt. No matter how strong the circumstances, if they can be reconciled with any theory generated by all the evidence that some one else may have done the act, then the defendant is not shown to be guilty by that full measure of proof the law requires and you should acquit him. (41) I charge you, gentlemen, that the humane provisions of the law is that upon the evidence there should not be a conviction unless, to a moral certainty, it excludes every reasonable hypothesis other than that of the guilt of the accused. No matter how strong the facts, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by that full measure of proof which the law

requires. (13) I charge you, gentlemen of the jury, that if you, upon considering all of the testimony, have a reasonable doubt about the defendant's guilt, arising out of any part of the evidence, you should find him not guilty. (16) I charge you, gentlemen of the jury, that you should acquit the defendant unless the evidence excludes every reasonable supposition except that of his guilt. (21) Gentlemen, there is not sufficient evidence before you to authorize a verdict of guilty at your hands. (29) I charge you, gentlemen of the jury, that if you believe the evidence in this case, your verdict should be not guilty. (32) I charge you, gentlemen, that there is no evidence before you that the deceased, Murzy Parham, was murdered. (9) I charge you, gentlemen of the jury, that before you are authorized or justified in convicting this defendant the hypothesis should flow naturally from the facts proved and be consisent with all of them. (14) I charge you, gentlemen of the jury, that if after considering all the evidence in the case, your minds are left in a state of doubt or uncertainty as to whether the deceased, Murzy Parham, was killed by the defendant, or by being struck and run over by an engine on the track of the Southern Ry. Co.; then you are not satisfied of defendant's guilt beyond a reasonable doubt, and you should acquit him. (26) To convict the defendant, the evidence should be as strong as the positive testimony of one credible witness who proves beyond all reasonable doubt the guilt of the defendant. (27) Gentlemen of the jury, the law says that it is better far that the guilty go unpunished than that the innocent, or those whose guilt is not shown beyond a reasonable doubt, should be punished. (28) It is the theory of the law that it is better for the guilty ones to go without punishment, than that those should suffer punishment whose guilt is not shown by the evidence to a moral certainty and beyond all reasonable doubt. (33) Gentlemen, the law says that it is far better that the guilty should go unwhipped of justice than that the innocent should be punished. (30)

I charge you, gentlemen of the jury, that you should carefully examine the whole of the testimony, and that if upon the whole evidence your minds are left in a state

[Parham v. The State.]

of doubt or uncertainty that the defendant is guilty you should acquit him. (34) I charge you, gentlemen of the jury, that if you are reasonably doubtful as to the proof in this case, as to any material allegation of the indictment, you must acquit the defendant. (35) I charge you, gentlemen of the jury, that a probability that Murzy Parham came to her death in some other way than by the act of the defendant is sufficient to justify his acquital. (36) I charge you, gentlemen of the jury, hat if there is a probability that Murzy Parham was killed in some other way than by the act of the defendant, you should acquit him. (40), I charge you, gentlemen of the jury, that before you can convict this defendant, every member of the jury must be satisfied beyond a reasonable doubt of the guilt of the defendant."

G. O. CHENAULT and LOWE & TIDWELL, for appellant. No brief came to the reporter.

MASSEY WILSON, Attorney General, for the State.—No brief came to the reporter.

DENSON, J.—Emmett Parham was indicted for murdering his wife Murzy Parham. He was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for 20 years. From the judgment of conviction, the defendant appealed.

There is no merit in the insistence that a copy of the indictment was not served on the defendant.—*Will Stoudenmeire's Case*, (Ala., Nov. term, 1905) 40 South. 48; *Bodine's Case*, 129 Ala. 106, 29 South. 926.

The mangled remains of the dead wife were found on the track of the Southern Railroad in Lawrence county, at a point near a station called Hillsboro, on Sunday morning, July 15, 1905. It was not disputed that the body of the deceased had been run over and mangled by a train of cars, and the insistence of the state was that the defendant killed her and afterwards placed her body on the track for the purpose of covering up his crime. For the establishment of the insistence, and to show the guilt of the defendant, the state depended upon circum-

[Parham v. The State.]

stantial evidence. It was shown that there was a pool of water in a cow pasture not far from the point where the remains of the deceased were found. One of the theries of the state seems to be that the defendant drowned the deceased in that pool ,and afterwards placed her body on the track of the railroad. They were a youthful couple, the defendant being 19 and the deceased 17. The evidence showed without dispute that they did not live together in harmony; they had separated two or three times, and at the time of the death of the deceased they were separated, the defendant was staying at Trinity, and the deceased was with her mother six miles away. A week before the killing the deceased walked to Trinity to see the defendant, he returned with her, and they spent Saturday night, Sunday and Sunday night at the home of the mother of the deceased, he defendant returning to Trinity on Monday morning. The following Saturday afternoon the deceased went to Trinity on the train, and the defendant associated with her there. And by his own testimony it was shown that she started in the night to return by foot on the railroad to her mother's home six miles distant from Trinity. He testified that he accompanied her a mile and a half on the way until they reached a road or path which he testified turned from the railroad, and led to the home of his father, there he left her, according to his evidence, to go alone in the night, four miles and a half on foot to her destination. Her mangled remains were found the next morning near Hillsboro, about four miles from the point where he testified that he parted from her.

Mrs. Hall, the mother of the deceased, after testifying to the strained relations that existed between the couple, and after testifying about their return from Trinity together on Saturday night and spending the time until Monday morning together at her home, testified that on that occasion defendant treated the deceased "nicely and kindly," and when he left her was as pleasant and as nice to her as he could be. On cross-examination the witness was asked this question: "What did he say to her when

he left her that morning?" The ruling of the court sustaining an objection to the question may be sustained on the theory that, "the record does not show what answer from the witness was expected, so that this court can pass intelligently on the ruling, and we cannot, therefore, consider it."—*Tolbert's Case*, 87 Ala. 27, 36 South. 284; *Ross' Case*, 139 Ala. 144, 36 South. 718. "Furthermore, the question was very general, so much so, that irrelevant evidence would have been responsive to it."— *Ross' Case, supra.* Moreover, it affirmatively appears further on during the cross-examination that the witness testified that defendant, when he left deceased that Monday morning, asked the deceased to come to see to him. So, the question, it seems, was answered. The defendant followed the question above referred to with this one, namely, "Did Emmett (defendant) that morning, in the presence of the deceased, ask you to go with the deceased to Decatur to have some pictures taken?" The question was objected to as being immaterial. The theory of appellant is that proof that he wanted pictures of his wife taken would tend to show an affection on his part for her, and thus tend to disprove that he entertained enmity towards her. To put the court in error it should be made to appear by the bill of exceptions that the evidence sought to be elicted by the question was material. And unless this appears from the nature of the question, it is the duty of the party excepting to state to the court the answer that he expects. Nor does it plainly appear from the bill of exceptions whether it was the pictures of the wife or of the witness that were referred to by the defendant.

Aubin Williams, a witness for the state, who was section foreman of the Southern Railroad and had been for 15 years, after testifying that he saw the deceased's body on the railroad on the morning of the 16th of July, and after testifying in detail as to its appearance and the appearance of her clothing, etc., was asked, on cross-examination, this question: "Is it not a part of your business as an employe of the Southern Railway, when a person is found dead on the raiload track or killed by the train,

to get up evidence in reference thereto for the railroad?" It has been argued that this question was competent for the purpose of showing interest or bias on the part of the witness. It having been shown without dispute that the witness was an employe of the railway company, the jury has this fact before them in weighing his evidence, and whether he had ascertained the facts about which he had testified voluntarily, or because it was his duty "to get up evidence," would seem to be immaterial. Moreover, the record fails to show that the facts about which he testified "were gotten up by him."

It was competent for the state to prove threats made by the deceased, to the effect that if the deceased did not quit following him around he was going to kill her. The threats were made a week before the death of the deceased occurred, and might be consdered by the jury as tending to show malice on the part of the defendant. and a disposition to harm her. If the form of the question was objectionable (which we do not decide), no harm resulted, as the witnesses gave in detail what the defendant said in that respect. *Wilson's Case,* 140 Ala. 43, 37 South. 93; *Marler's Case,* 68 Ala. 580. There is nothing in the suggestion with reference to the ruling of the court on the admissibility of threats, that the corpus delicti had not been proved. If this was necessary before proof of threats was admissible, yet, under the evidence, it was a jury question.—*Vaghan's Case,* 130 Ala. 18, 30 South. 669.

Quint Terry, one of the witnesses by whom threats were proved, was a member of the coroner's jury that investigated the cause of the death of the deceased. On cross-examination, he testified that he said nothing about the threats before the coroner's jury, that he was a juror, and not a witness. He was asked if the coroner's jury was not instructed and directed to look up all the evidence they could that would bear on the question? The fact that witness knew of the threats and did not speak of them at the investigation was the only pertinent inquiry, and was fully brought out, and the instructions to the jury could add nothing to it as a discrediting cir-

cumstance, and while, perhaps, it would not have been error for the court on cross-examination to have allowed the question, we cannot hold that the court erred in disallowing it.

The grounds of the objection made to the hypothetical question put to the physicians were overcome by proof subsequently made of the weight of the deceased, and that she was pregnant at the time of her death.

The question to Mrs. Hall, "Was she afraid to go about at night wherever she wanted to alone?" was properly disallowed. *Poe's Case,* 87 Ala. 65, 6 South. 378; *Thomas' Case,* 107 Ala. 13, 18 South. 229.

The objection to the question propounded to witness Gibson with respect to a pool of water becoming colored, was properly sustained. The question was not confined to the pool testified about by the witnesses, nor were the conditions of the indefinite pool shown to be the same as the one testified about.

The instructions given to the coroner's jury by the coroner could shed no light on the issues involved. Besides, the questions calling for such evidence were leading. No error was committed in sustaining objections to the questions calling for such instructions.

It was the duty of the court to instruct the jury in resepect of the two degrees of murder. Hence, there is no merit in the exception reserved to the oral charge of the court.—Code 1896, § 4857; *Gafford's Case,* 125 Ala. 1, 28 South. 406.

Charges A and B, given for the State, assert correct propositions. *Jackson's Case,* 136 Ala. 22, 34 South. 188; *Winter's Case,* 123 Ala. 1, 26 South. 949; *McKleroy's Case,* 77 Ala. 95.

In one count of the indictment the means by which the defendant killed the deceased are alleged to be unknown. In the light of this allegation, charge C was properly given for the state.

In so far as charge D asserted a proposition of law it was correct. If the abstract assertion that there is no such thing as certainty in human affairs is inaccurate it would not infect the charge with reversible error.

[Parham v. The State.]

Given charge E has been expressly approved in the case of *Prater v. State,* 107 Ala. 26, 18 South. 238. And given charge F was approved in *Jackson's Case,* 136 Ala. 22, 34 South. 188; *Prater's Case, supra.*

Charge G asserts a correct proposition of law, and was properly given.—*McClellan's Case,* 117 Ala. 140, 23 South. 653.

Quite a number of charges, 21, were given at the request of the defendant, and 20 were refused to him. Charge 4, refused to defendant, is covered by charge 1, given at his request. At least he recieved all the benefit under that charge that he would have been entitled to under 4 if it had been given.

Charges 6, 37, and 41 were properly refused on the authority of the following vases:—*Bowen's Case,* 140 Ala. 65, 37 South. 233; *Turner's Case,* 124 Ala. 59, 27 South. 272; *Thomas' Case,* 106 Ala. 19, 17 South. 460; *Barnes' Case,* 111 Ala. 56, 20 South. 565.

The defendant received all the benefit under given charges 10 and 15, given at his request, that he would have been entitled to under charges 13 and 16 that were refused. Nothing more than the doctrine of reasonable doubt is asserted in these charges, and it will be observed from reading the charges that were given by the court at the request of the defendant, as shown by the bill of exceptions, that this doctrine was presented in many phases to the jury. And when the doctrine is once presented in a clear-cut charge, we can see no reason for requiring the court to give a dozen or more on the same line, nor do we believe that a multiplicity of such charges tend to enlighten the jury; but it may be they are not asked for that purpose.

Charges 21, 29 and 32, refused to the defendant, invade the province of the jury and for this reason are vicious.

Refused charge 9 is misleading, and incomplete, in that it does not notify the jury of the "hypothesis" that is referred to. Moreover, the defendant had the benefit of the principle attempted to be presented by the charge in given charge 5.

[Dix v. The State.]

Charge 14 was properly refused; it is substantially the same as charge 12 which was given at the request of the defendant.

Charge 26 has been several times condemned by this court.—*Mickle's Case,* 27 Ala. 20; *Faulk's Case,* 52 Ala. 415; *Bland's Case,* 75 Ala. 574; *Thornton's Case,* 113 *Ala.* 43, 21 South. 356, 59 Am. St. Rep. 97.

Refused charges 27, 28, and 33, besides being otherwise vicious, are mere arguments ,and were properly refused. —*Barnes' Case,* 111 Ala. 56, 20 South. 565.

Charge 30, while not in the identical language of given charges 12 and 25, asserts the same proposition, and is substantially a duplicate. The court was under no duty to give it.—1 Mayfield's Dig. p. 174 (20).

Charge 34 was properly refused on the authority of *Stoball's Case,* 116 Ala. 454, 23 South. 162; *Littleton's Case,* 128 Ala. 31, 29 South. 390; *Thompson's Case,* 131 Ala. 18, 31 South. 725.

Charges 35 and 36 were substantially given in charges 17, and 18, and the court was under no duty to give the refused charges.

Refused charge 40 is a duplicate of given charges 11, and 22.

We have found no error in the record, and the judgment is affirmed.

Affirmed.

WEAKLEY, C. J., and HARALSON and DOWDELL, JJ., concur.