59 So.2d 582

**RAY v. STATE.**

**6 Div. 171.**

Supreme Court of Alabama.
May 29, 1952.

Rehearing Denied June 26, 1952.

Roderick Beddow, Jr., and Beddow &
Jones, Birmingham, and Ross, Ross &
Ross, Bessemer, for appellant.

420

Si Garrett, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., and Marvin Cherner, Montgomery, of counsel, for the State.

LIVINGSTON, Chief Justice.

Grover Cleveland Ray was indicted and tried in the Circuit Court of Jefferson County, Alabama, Bessemer Division, for the murder of his wife, Mildred Juanita Ray. The indictment under which he was tried contained three counts. Omitting formal parts, count 1 charged that Ray killed his wife by beating her with a blunt weapon, a better description of which is unknown to the Grand Jury: count 2 charged that he killed her by beating her with his fists, and count 3, that he killed her by beating her with some deadly instrument or weapon, a better description of which is unknown to the Grand Jury. Defendant interposed a plea of not guilty. The jury returned a verdict of murder in the first degree and fixed his punishment at life imprisonment in the state penitentiary.

The testimony tended to prove that the said Mildred Juanita Ray was killed after midnight September 5, 1950, that being the early morning following Labor Day, September 4, 1950, at or near a small hamlet located approximately ten or twelve miles from the city of Bessemer, Alabama, called Bucksville. The appellant was, at the time, thirty-four years of age, and was employed by the Southern Railway in the capacity of brakeman. His place of employment was some twenty eight miles from his residence at McCalla, Alabama. At the time of the

homicide, in addition to appellant's employment with the Southern Railway, he and his wife were operating a tavern, which they had been operating between five and six months, at or near Bucksville and about six miles from where they lived.

There was evidence tending to prove that on the night of September 4, 1950, appellant and his wife had an argument, and the last time they were seen that night Mrs. Ray was running along the highway with appellant in pursuit.

The body of Mrs. Ray was found in a ditch some distance outside Bessemer about 7:00 o'clock, a. m., on September 5, 1950. Her face was covered with numerous bruises and lacerations; her nose was broken, and on her body were numerous marks indicating bites. The deputy coroner testified that, in his opinion, death was caused by a double temporal fracture of the skull.

Appellant testified in his own defense, and although his testimony was in conflict with some pretrial statements made by him, he admitted that he blacked out during the night his wife was killed and found himself the next morning about 6:30 o'clock, a. m., lying in the ditch next to the body of a dead woman with his arm over or across her, and whom he later learned was his wife. He maintained throughout the trial that either he did not kill his wife, or if he did, he was so drunk that he did not remember doing it. There were no weapons at the place where the deceased body was found, other than certain rocks upon which the deceased lay, indicating use in fracturing the skull of deceased. The appellant and deceased were divorced in 1946, but after some two or three months separation married again. There was evidence tending to show that appellant was drunk or drinking on the night of the homicide and that he had a "hang-over" the morning after.

■ Appellant earnestly insists that the evidence shows without dispute that he was so drunk as to have been incapable of forming a specific intent essential to a malicious killing, or premeditation and deliberation essential to murder in the first degree.

The controlling principle is stated in our recent case of Helms v. State, 254 Ala. 14, 47 So.2d 276, 281, which is as follows:

"Voluntary drunkenness neither excuses nor palliates crime. But in murder cases evidence of drunkenness to such degree that the accused is incapable of rational action and hence incapable of forming a specific intent essential to a malicious killing may reduce the killing to manslaughter, or may negative the premeditation and deliberation essential to murder in the first degree, or reduce the crime to murder in the second degree. Ivory v. State, 237 Ala. 344, 186 So. 460; King v. State, 90 Ala. 612, 616, 8 So. 856."

■ In the instant case the questions as to the extent of appellant's drunkenness was raised for the first time in the court below on motion for a new trial. Appellant requested no charges touching the question. Be that as it may, we are clear to the conclusion that the question of appellant's drunkenness to the extent of relieving him from responsibility for his acts was one for the jury.

On cross-examination of appellant he was interrogated relative to a vacation trip he took to Meridian, Mississippi, with one Wilson in August preceding the homicide. He was asked, in substance, if he had a girl friend in Mississippi named "Ann"; if he tried to find Ann and was told that Ann had gone to Mobile. He was asked if he and Wilson took three teen-age girls out to a sandwich shop or some place like that and had some sandwiches and drinks with them. He was asked, in substance, if he had told the postmistress at McCalla that he was expecting a letter from some one down in Mississippi, and that when it came not to deliver it to his home but to deliver it to him because he didn't want his wife to see it. We make no attempt to detail the cross-examination of appellant on the point. For purposes at hand we think the foregoing is sufficient. Appellant answered some of the questions in the negative, and as to others, said he did not remember.

In rebuttal the testimony of Wilson and the postmistress tended to impeach the

testimony of appellant as to these matters. Proper objections were made and exceptions reserved. This line of testimony was admitted on the theory that it tended to prove motive. But appellant insists that it is incompetent, immaterial and irrelevant for that purpose, in that the evidence introduced was lacking in probative force, and that if the rebuttal evidence was offered for the purpose of impeaching the testimony of appellant, it was inadmissible because he could not be impeached on immaterial matters.

In the case of Williams v. State, 255 Ala. 229, 51 So.2d 250, we held that it is not necessary to establish an improper or illicit relationship before such evidence is relevant. True, the facts of the Williams case are not identical with the facts in the instant case, but they are analogous. In Johnson v. State, 17 Ala. 618, the State, to prove motive in the trial of a husband for the murder of his wife, was allowed to prove that the husband had asked a woman for permission to visit her daughter. See also Marler v. State, 68 Ala. 580. In our opinion the evidence complained of was not lacking in probative force and the trial court did not err in overruling appellant's objections to it. See also Duncan v. State, 88 Ala. 31, 7 So. 104; Johnson v. State, 94 Ala. 35, 10 So. 667; Spicer v. State, 188 Ala. 9, 65 So. 972; Davis v. State, 222 Ala. 285, 131 So. 900; and 11 Ala. Dig., Homicide, ⊗=166(7).

Ground 12 of appellant's motion for a new trial reads as follows:

"For that the jury was guilty of improper conduct in and about the reading of newspapers published in Jefferson County, Alabama, containing newspaper reports of alleged homicide alleged to have been committed by a husband alleged to have killed his wife during the time while this defendant was on trial charged with the offense of murder of his wife, which said jury was then and there sitting in deliberation on this defendant's case."

In support of the foregoing ground for a new trial appellant offered, as witnesses, only two of the jurors who participated in the trial of the case. A copy of the Birmingham News, dated November 6, 1950, an afternoon newspaper of general and wide circulation in Jefferson County, Alabama, and throughout the state, was offered in evidence. On the front page of the paper was the picture of one Harvey Green and his wife, Thelma Green, together with a news story relating that Green was accused in the butcher knife slaying of his wife. One of the jurors examined testified that he purchased a copy of the paper Monday night and carried it to the hotel where the jurors were quartered for the night: that he saw the picture of Green and his wife and read the article concerning the alleged slaying. But this juror also testified that he saw and read a similar account in the morning newspaper before he came to court and before he was selected as a juror in the trial of appellant. The other juror testified that he saw the newspaper in the hotel room occupied by the jury on the night of November 6, 1950: he did not recall that he read the article but did recall saying something relative to the size of Green's head. It does not appear that the paper was in the jury room during the jury's deliberations. The article referred to is before us. It contains nothing remotely relating to the homicide with which appellant was charged, or the trial thereof. Both jurors testified that they knew of the accusation of Green before they were selected as jurors to try appellant.

Conceding that, as pointed out in Leith v. State, 206 Ala. 439, 90 So. 687, juries in criminal cases should be entirely separated from the world until verdict rendered, and that as a general rule the members of a jury should not read newspaper accounts or editorials or statements of facts pertaining to the case on trial, and which may be calculated to affect the verdict, we are clear to the conclusion that, under the circumstances of this case, there was no evidence to indicate that appellant's case was prejudiced in this regard. This case is readily distinguishable from the case of Seekers v. State, 35 Ala.App. 40, 44 So.2d 628, certiorari denied 253 Ala. 420, 44 So. 2d 633.

The general charge was requested by appellant as to each degree of the homicide charged, and each charge refused. Suffice it to say, that on the record before us, these charges were refused without error.

Charge No. 2 was properly refused. The vice of this charge, as applied to a homicide case, is that it is well calculated to mislead and confuse the jury, for the reason that it ignores the possibility that the jury may find the defendant guilty of some lesser degree of homicide embraced within the indictment for murder in the first degree. Instructions predicated upon the insufficiency of evidence to justify a conviction of a higher degree of homicide, without regard to its sufficiency to justify a conviction of a lesser degree, are essentially erroneous. Stoball v. State, 116 Ala. 454, 23 So. 162; Littleton v. State, 128 Ala. 31, 29 So. 390; Thompson v. State, 131 Ala. 18, 31 So. 725; Parham v. State, 147 Ala. 57, 42 So. 1; Burkett v. State, 154 Ala. 19, 45 So. 682; Smith v. State, 183 Ala. 10, 62 So. 864.

Charge No. 9 was properly refused because the principle of law thereby expressed was fully covered by given written charge No. 5.

Charge No. 21 was properly refused because the court properly and carefully instructed the jury that the burden was upon the State to prove the defendant's guilt beyond a reasonable doubt. Edwards v. State, 205 Ala. 160, 87 So. 179; Russo v. State, 236 Ala. 155, 181 So. 502; Wilson v. State, 243 Ala. 1, 8 So.2d 422; Odom v. State, 253 Ala. 571, 46 So.2d 1; Stokley v. State, 254 Ala. 534, 49 So.2d 284.

Charge No. 22 was properly refused because it is a so-called "single fact charge" and is bad because it invades the province of the jury and withdraws from the jury a consideration of all of the evidence. See Kent v. State, 252 Ala. 371, 41 So.2d 197; Robinson v. State, 243 Ala. 684, 11 So.2d 732; Daniels v. State, 243 Ala. 675, 11 So. 2d 756; Wilson v. State, supra; Vernon v. State, 239 Ala. 593, 196 So. 96; McDowell v. State, 238 Ala. 101, 189 So. 183; Russo v. State, supra.

Refused charge No. 32 is substantially the same as refused charge No. 21 and was properly refused for the same reasons, i. e., that the court adequately instructed the jury that the defendant's guilt must be proved beyond a reasonable doubt. See authorities cited above.

Charge No. 35 was properly refused because the principle of law thereby expressed was fully covered in the oral charge of the court.

Charge No. 36 was properly refused because it was abstract, argumentative and misleading. It deals with proof of alibi, but there was no evidence offered in this case tending to establish an alibi.

We have carefully examined the record and find no error to reverse.

Affirmed.

BROWN, SIMPSON and STAKELY, JJ., concur.