494 So.2d 120 (1985)
Rose Donna COLBURN, a/k/a Rose Donna Fine, etc.
v.
STATE.
6 Div. 261.
Court of Criminal Appeals of Alabama.
August 20, 1985.
As Corrected on Denial of Rehearing October 8, 1985.
Certiorari Denied December 20, 1985.
On Return to Remand July 15, 1986.
E.H. Hawkins of de Graffenried & Hawkins, Tuscaloosa, for appellant.
Charles A. Graddick, Atty. Gen., and Tommie Wilson, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-89.
LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a verdict and judgment of conviction and sentence for manslaughter in a trial on an indictment charging defendant with the murder of James Colburn, from whom she had been divorced but with whom she was living at the time he was killed. It was clearly established by the undisputed evidence that the alleged victim's head and brain were entered by a bullet of a pistol fired by defendant, while the victim was on a bed in a home where defendant was living, accompanied at times by the victim. The evidence also shows, without any present contention to the contrary, that the victim was hospitalized for a number of days before he died.
Without criticism of anyone and with credit to all concerned, we observe that the trial was an extraordinarily long one, as counsel for the State and counsel for defendant did all that they should have done in presenting their respective sides of the case with due regard for their duty as attorneys. Many points were raised on the trial of the case that would have given rise *121 to problems for a court on appeal to resolve, if there had been a verdict finding defendant guilty of murder, a Class A felony, instead of manslaughter, a Class C felony, defined as to one category thereof by Alabama Criminal Code, § 13A-6-3(a)(2):
"A person commits the crime of manslaughter if:
"...
"He causes the death of another person under circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
The attorneys on appeal recognize the narrowing of the issues from what they were on the trial and have properly condensed their briefs accordingly, to such an extent that we find it unnecessary to do more in the statement of the facts of the case than to summarize some of the important features of the evidence.
Although there was some evidence that Mr. and Mrs. Colburn conformed to their marital vows to some extent, their life was so far from what it should have been that it resulted in hostility between the two most of the time. According to a number of witnesses for the State, the defendant was chiefly to be blamed, while witnesses for the defendant were of a contrary view. There was little disagreement among the witnesses as to the conclusion that alcoholic intoxication was the core of most of their problems. This is not only shown by the testimony of friends of one or the other, but also by hospital records and the testimony of physicians.
There was also much testimony in the case to the effect that the victim had time and time again physically abused the defendant. This is probably correctly summarized from the standpoint of defendant by the following statement found in the chart of a health center in Tuscaloosa County upon defendant's admission thereto:
"Mrs. Colburn has an extensive history of involvement with the Center's Alcohol Program, much relevant personal and family history can be found in previous intakes. She is an alcoholic who has been dry for about five months. Ms. Colburn has been married three times. She has been in her present relationship for two years. This has been a very violent relationship and also has been an alcoholic relationship. The fighting has been present throughout, but reached a peak in March of this year when she and her husband were drinking and began to fight. He `kicked her in the head,' and as a result of this, she has had many medical difficulties with the final one being the surgery to remove the blood clot.
"She reports that while her husband has continued to drink, she has not drunk since the incident in March. She gives a history of heavy drinking for years. She was treated for alcoholism at 35 West and in the Phoenix House. Her therapy shows much lack of follow-through with recommended treatment."
It can be seen from the above, we think, why only three issues are presented on appeal as to whether the judgment of the trial court should stand, and one of them, the last, is as to whether the punishment imposed was legally correct. We now consider the issues presented.

I.
The first issue is thus captioned in brief of counsel for appellant:
"WHETHER THE TRIAL COURT IMPROPERLY RULED THAT CHARACTER EVIDENCE OF THE DEFENDANT'S PAST RELATIONSHIPS WITH MEN WAS ADMISSIBLE IN HER MURDER TRIAL?"
We look in vain for reported cases in Alabama of wives killing their husbands in which the question now considered has been raised, but we have no difficulty in finding cases of uxoricide which seem to answer the question, and we see no good reason why they should not apply in a *122 wife-killing-husband case. We quote the language of Chief Justice Livingston in Ray v. State, 257 Ala. 418, 59 So.2d 582, 585 (1952), as follows:
"In the case of Williams v. State, 255 Ala. 229, 51 So.2d 250, we held that it is not necessary to establish an improper or illicit relationship before such evidence is relevant. True, the facts of the Williams case are not identical with the facts in the instant case, but they are analogous. In Johnson v. State, 17 Ala. 618, the State, to prove motive in the trial of a husband for the murder of his wife, was allowed to prove that the husband had asked a woman for permission to visit her daughter. See also Marler v. State, 68 Ala. 580. In our opinion the evidence complained of was not lacking in probative force and the trial court did not err in overruling appellant's objections to it. See also Duncan v. State, 88 Ala. 31, 7 So. 104; Johnson v. State, 94 Ala. 35, 10 So. 667; Spicer v. State, 188 Ala. 9, 65 So. 972; Davis v. State, 222 Ala. 285, 131 So. 900; and 11 Ala.Dig., Homicide, Key No. 166(7)."
In the light of what has just been quoted, we determine appellant's first issue adversely to her, notwithstanding the citation by appellant of eminent authorities, which appellant claims, but which we do not find, are contrary to our decision as to this issue.

II.
Counsel for appellant submits as the next issue the following:
"WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENDANT'S WITNESS, A SOCIAL WORKER SPECIALIZING IN THE FIELD OF ADULT ABUSE, TO TESTIFY AS AN EXPERT WITNESS."
The particular issue pertains to what took place during the testimony of Mr. LaDon Brackin, who stated that he was a "Social worker with the Tuscaloosa Department of Pensions and Security" and that he was "what is called an Adult Service Worker," in which work he had engaged for the then-preceding two years. He stated that he had been "trained as a minister" and that he had been a pastor, serving two rural churches in Tuscaloosa County. He received a Ph.D. degree from the University of Alabama after attending another university where he majored in religion and minored in sociology. While he was testifying on direct examination as to the experience he had had in his work in observing "adults who have been abused," he was asked, "Do you have a judgment as to how many cases of that nature you have worked on?" Thereupon, the following occurred:
"MR. HUDSON [Assistant District Attorney]: Your Honor, I object and ask for a proffer of relevancy as to this line of questioning.
"MR. HAWKINS [Defendant's attorney]: We intend to offer him as an expert in the field of adult abuse, Your Honor.
"MR. HUDSON: It was my understanding in numerous pretrial conferences, this would be a voir dire situation.
"THE COURT: Are you requesting that?
"MR. HUDSON: Yes.
"THE COURT: Mr. Montgomery [evidently the bailiff], will you escort the jury to the jury room behind the courtroom, please?
"(Whereupon, the jury was removed from open court.)"
The transcript shows that while the jury was out of the courtroom, there was some discussion among the trial judge and the attorneys and there was a lengthy period of voir dire interrogation of the witness by attorneys for the State and defendant, which was concluded as follows:
"MR. HUDSON: Your Honor, he does not have the expertise. He classifies himself so in the category by saying that he has only dealt with ten or twelve cases, and in other cases as a pastor. Of course, it does depend on his past experience. But you can't say that all people will
"THE COURT: I will sustain the objection. Bring them in, Mr. Montgomery.
"(Jury was brought back into the courtroom.)"
*123 The witness continued to testify for a substantial length of time on alternating direct and cross interrogation as to what he knew as to the condition of defendant. His testimony was concluded as follows:
"MR. HAWKINS:
"Q. Mr. Brackin, did you recommend at the time, that she apply for Social Security disability?
"A. I did.
"Q. Apply for Social Security benefits?
"A. I did at one time, yes.
"Q. And is that because of hospitalization?
"A. Her physical condition, yes.
"Q. And she reported to you that those hospitalizations were caused by beatings from her husband?
"A. Yes, that is correct.
"FURTHER RECROSS-EXAMINATION
"BY MR. HUDSON:
"Q. Did she apply for Social Security?
"A. I do not know. I think she applied for SSI.
"Q. Yes, sir. Do you know if they turned her down or what became of her application?
"MR. HAWKINS: I object.
"THE COURT: I sustain.
"MR. HUDSON: No further questions.
"MR. HAWKINS: That is all we have.
"THE COURT: You may step down.

"(WITNESS EXCUSED)."
Our attention is not called to any specific testimony that defendant sought to show by the witness as an expert "in the field of spouse abuse" that defendant did not succeed in showing by such witness without the trial court's allowing him to be considered qualified to testify as an expert witness, and our attention has not been called to any detriment to the defendant by reason of the court's ruling in effect that the witness had not been shown to be qualified to testify as an expert on the subject of "spouse abuse." It is our conclusion, therefore, that there was no error in the ruling of the trial court that defendant had not shown that the witness was qualified to testify as an expert on the subject. Moreover, to hold that reversible error was committed by the trial court in its failure to allow the witness to testify as an expert would be contrary to that which was held in Reynolds v. State, Ala.Cr.App., 346 So.2d 979, 982, cert. denied, Ala., 346 So.2d 986 (1977), as follows:
"The general rule is that the competence of an expert witness to testify is an inquiry substantially within the discretion of the trial judge. This court, on appeal, will not disturb the trial judge's determination of expert qualifications unless there is a clear abuse of this discretion. Cobb v. State, 50 Ala.App. 707, 282 So.2d 327 (1973); Luckie v. State, 55 Ala.App. 642, 318 So.2d 337, cert. denied, 294 Ala. 764, 318 So.2d 341 (1975)."

III.
The trial court sentenced the defendant, this appellant, to imprisonment for twelve years. In doing so, it appears that it was following the language of Alabama Criminal Code, § 13A-5-6(a)(5), which reads: "for a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years." At the time of the imposition of the sentence, a serious legal question then existed as to whether the quoted subsection of § 13A-5-6 or, on the other hand, subsection (3), which reads: "for a Class C felony, not more than 10 years or less than 1 year and 1 day," should govern. This question was resolved within a few weeks in the case of Smith v. State, Ala.Cr.App., 447 So.2d 1327, affirmed, Ala., 447 So.2d 1334 (1984), in which it was held that the term of imprisonment under § 13A-5-6 for a class C felony where a firearm or deadly weapon was used or attempted to be used in commission of that felony is 10 years.
In accordance with Smith, supra, the judgment of the trial court is due to be affirmed but the cause should be remanded for the imposition of a proper sentence.
*124 The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED; REMANDED FOR PROPER SENTENCING.
All the Judges concur.

ON RETURN TO REMAND
TAYLOR, Judge.
We remanded this case to the trial court with directions to impose a proper sentence. The court has fully complied with our directions. We, therefore, affirm appellant's judgment and sentence.
OPINION EXTENDED;
AFFIRMED.
All the Judges concur.