STATE of Minnesota, Respondent,

v.

Kevin Earl VANCE, Appellant.

No. C3–85–2120.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Review Denied Oct. 29, 1986.

Hubert H. Humphrey, III, Atty. Gen.,
Rebecca Hamblin, Sp. Asst. Atty. Gen., St.

Paul, Marcia Rowland, Carver Co. Atty., Chaska, for respondent.

C. Paul Jones, State Public Defender, Laura Underkuffler, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

This appeal is from a judgment of conviction and sentence. Appellant Kevin Earl Vance was charged and subsequently convicted of two counts of first-degree criminal sexual conduct in violation of Minn. Stat. §§ 609.342(d) and 609.342(e)(i) (1984). He was given an executed sentence of 72 months and is currently incarcerated. We remand for vacation of one of the two convictions and affirm in all other respects.

## FACTS

Sixteen-year-old S.D. was babysitting at the home of Ricky and Susie Ann Jeske in Watertown, Minnesota, on the evening of December 31, 1984. At about 1 a.m., a man whom S.D. had never seen before came to the door and asked if Rick was home. Thinking the man was a friend of the Jeskes, S.D. let him in the house.

The man eventually produced a knife, ordered S.D. to undress, and forcibly engaged in sexual intercourse with her. After about five minutes, S.D. reached up and pulled the man's orange stocking cap over his eyes and started to scream. He removed the cap and stuffed it into S.D.'s mouth. She pulled it out, scratched his face, and sat up and bit him on the right shoulder. He bit her back on the nose.

The man got up and dressed. He then ordered S.D. to get up and go into another room. She walked down the hall into the children's room, turned on the lights, and started yelling. The man fled.

S.D. dialed 911 on the telephone. Two deputies from the Carver County Sheriff's office, Roger Roatch and Tim Curtin, responded to the call, which had come in at 1:46 a.m. Roatch interviewed S.D. while Curtin canvassed the neighborhood for witnesses. At the omnibus hearing Roatch testified that S.D. had given him the following description of her assailant:

> As far as clothing, it was jeans, reddish plaid shirt, a navy pea coat and an orange stocking hat. As far as his physical features, it was long blondish hair, mustache with the sides extended down over the mouth and thin face.

An orange cap found on the floor was recovered. S.D. also told Roatch her assailant was 5'11" to 6' tall and that she had scratched him.

One of the Jeskes' neighbors spoke to Curtin and indicated that she saw a truck at the Jeske residence when she returned home between 1:00 and 1:30 a.m. She described it as a red and white Chevy pickup from 1968–1971 and stated that the lights were on and the engine running.

When the Jeskes returned home, Roatch began giving them S.D.'s description of the assailant. Ricky Jeske broke in and said it sounds like Cody, or, it has to be Cody. The Jeskes informed Roatch that "Cody" is Kevin Vance's nickname and that Vance worked with Ricky Jeske. Susie Jeske stated that Vance had been over earlier in the day looking for her husband and had indicated he would stop back later. Vance had been to the Jeskes' home several times before and was known by their children.

Ricky Jeske gave the deputies directions to Vance's mobile home in Montrose. Because Montrose is located outside Carver County, two Wright County deputies accompanied Roatch and Curtin. The four deputies arrived at the mobile home at about 3:45 a.m. A 1970 orange and white Chevrolet truck matching the description given by the Jeskes' neighbor and registered to Vance was parked outside. Both Roatch and Curtin testified that one of the Wright County deputies had received a radio dispatch informing them that Vance was known to keep a loaded shotgun near his bed.

There were no lights on in the home. Roatch knocked and a woman answered the door. Roatch identified himself and asked for Vance. The woman, later identified as Vance's wife, swung the door open and went into the back room. The deputies entered the living room, shut the front door, and positioned themselves. Curtin testified that, after a few minutes, he heard a male voice, and the deputies proceeded single-file down the hallway with their guns drawn. When they entered the bedroom, Vance appeared to be sleeping. Roatch nudged him and ordered him to wake up.

Vance was informed he was under arrest, handcuffed and read the Miranda warning. After Vance indicated that he understood, Roatch began questioning him while Curtin questioned his wife in the living room. Vance made several seemingly inconsistent statements as to his whereabouts that evening and as to whether he was wearing an orange cap when he left home that afternoon. He was naked from the waist up and, when asked about the various marks on his body, he indicated that he was a machinist and had probably received them at work. He was then taken to jail, where he was interviewed by Richard Anding, an investigator with the Carver County Sheriff's office. At Anding's request, Vance showed him the mark on his right shoulder.

Two days later, on January 3, Anding again questioned Vance and asked to see the teeth mark. Vance lowered his shoulder and then replied, "You mean the scratch." Vance allowed Anding to photograph the mark. As Anding was leaving, Vance commented, "Oh, by the way, if I raped that girl, tell her that I have venereal warts." At trial a physician testified that S.D. had been diagnosed in April as having venereal warts.

After the omnibus hearings, the trial court ruled that all of the physical evidence seized from Vance's trailer on January 1 was inadmissible because the entry and arrest were illegal and justified neither by consent nor exigent circumstances. The photographs taken by Anding were also suppressed because the State had failed to comply with the notice provisions of Minn. R.Crim.P. 9.02. Other evidence, however, including Vance's statements at his home and later in jail and the deputies' observations of Vance's body, was ruled admissible.

At trial the critical issue was the identity of the assailant; there was little dispute that S.D. had been raped. S.D. testified and identified Vance as her assailant. The State introduced testimony by a Bureau of Criminal Apprehension (BCA) expert who had analyzed hairs found on the orange cap recovered from the scene of the crime. The expert testified that Vance qualified as a donor of the hair, but that neither S.D. nor any of the Jeskes did. Vance's defense at trial was that he was in downtown Watertown at the time of the rape. Vance himself, as well as two friends, testified as to his whereabouts.

The jury returned guilty verdicts on both counts, and the trial court imposed an aggravated sentence.

### ISSUES

1. Did the trial court commit prejudicial error in allowing evidence of the deputies' observations of Vance and of Vance's post-Miranda statements?

2. Was it prejudicial error to allow Anding to testify as to his observations of Vance's body?

3. Was the photographic lineup properly conducted?

4. Was Vance prejudiced by the prosecutor's reference to inadmissible evidence?

5. Was Vance prejudiced by the playing of a tape recording of the telephone call made by S.D. to the police after the assault?

6. Is the evidence sufficient to sustain the jury's verdict?

7. Was the trial court's imposition of an aggravated sentence an abuse of discretion?

8. Should this court vacate one of Vance's convictions?

## DISCUSSION

### I

After the omnibus hearings, the trial court ruled that the entry and arrest were illegal and ordered all physical evidence seized at Vance's trailer home suppressed. Vance contends that under the exclusionary rule, the trial court erred in failing to suppress the officers' observations of the marks on his body and his incriminating statements to the officers both at his home and at the jail.

■ Both parties agree that the giving of a Miranda warning, in and of itself, is insufficient to remove the taint of an illegal arrest and render evidence admissible. The warning is merely one factor to be considered along with the temporal proximity of the arrest and the confession, the presence of any intervening circumstances, the purpose and flagrancy of the official misconduct, the treatment of the defendant while confined, his relationship with his interrogators, and his freedom of communication with persons other than law-enforcement officers. *State v. Weekes*, 312 Minn. 1, 250 N.W.2d 590 (1977); *see also Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

■ The legality of the entry and arrest in this case is a close point, but one that we need not decide. Other evidence of Vance's guilt, including the identification evidence and unquestionably admissible physical evidence (including the orange cap) was overwhelming. Any constitutional error in the admission of the observations and statements stemming from Vance's arrest was, therefore, harmless beyond a reasonable doubt. *Watts v. State*, 305 N.W.2d 860, 862 (Minn.1981).

### II

■ In its omnibus rulings, the trial court had previously found that the photographs taken by Anding of the mark on Vance's right shoulder were inadmissible because the State had not complied with the notice requirements of Minn.R.Crim.P. 9.02, subds. 2(1)(e), (h). Vance contends the trial court erred in allowing Anding to testify as to his visual examination of the mark. The State concedes that it should have complied with the notice provisions, yet argues that no prejudicial error occurred in allowing Anding to testify. Again, we agree. Anding admitted he was no expert in dental evidence, and his opinion was rebutted by the testimony of Vance's first attorney, who testified that he had viewed the mark and that it did not appear to be a bite. It is unlikely that the jury was overly influenced by the suggestion that the mark was a bite or made by teeth. Even if it was, sufficient other evidence identified Vance as the assailant.

### III

■ Vance contends the photographic lineup was impermissibly suggestive because the photograph of him was the only one among seven in the display portraying a man with a mustache extending past the corners of his mouth and because the other photographs had numbers in the background. We agree with the State that the display shown to S.D. was not impermissibly suggestive: it included four photographs of men with mustaches, one with a beard, and only two with no mustaches. *See State v. Montjoy*, 366 N.W.2d 103 (Minn.1985) (lineup not impermissibly suggestive even though defendant was the only person with a beard and ages of participants varied within 12–year range). We also agree that there was little likelihood of misidentification: S.D. had viewed her assailant over a 45–minute period; she gave a detailed description which was so accurate that Ricky Jeske recognized it to be of Vance; she stopped at the fourth photograph and stated clearly and unequivocally that it was her assailant; and the photos were viewed only one day after the attack. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

## IV

■ Following the prosecutor's opening statement, Vance moved for a mistrial because the prosecutor referred to a remark made by Vance's wife the night of the arrest to the effect that Vance had been wearing an orange cap when he left the house that afternoon. Vance contends this constituted misconduct on the part of the prosecutor and denied him a fair trial. We disagree. The reference was made only once, and there is no evidence it was made in bad faith. After being instructed by the trial court, no further references were made to the wife's statements either by the prosecutor or by any of her witnesses. Nor did the remark prejudice Vance. Other independent evidence linked the orange cap to him, including the testimony of the BCA expert and Vance's own testimony that he had been wearing an orange cap off and on during the day and evening of December 31.

## V

■ At trial the State was allowed to play a tape recording of S.D.'s call to 911 immediately after the rape. Vance argues the tape should have been excluded under Minn.R.Evid. 403. However, such recordings may be properly admitted to show a victim's state of mind, and the tape in this case was edited to exclude overly prejudicial material. *See State v. Olsen*, 359 N.W.2d 67, 69 (Minn.Ct.App.1984). The trial court did not err in determining that the tape's probative value was not outweighed by the danger of unfair prejudice.

## VI

■ In reviewing a claim of sufficiency of the evidence,

an appellate court * * * is required to interpret the evidence in the light most favorable to the verdict and must assume that the jury disbelieved any testimony conflicting with the result reached. Deference is given to jury verdicts and if the jury, giving due regard to the presumption of innocence and the state's burden of proving guilt beyond a reasonable

doubt, could reasonably have found defendant guilty, the verdict will not be upset.

*State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984) (citations omitted).

The critical issue at trial was the identity of the assailant. S.D. positively identified Vance as her assailant. Her prior descriptions of the man who had attacked her to various people and during trial were detailed and consistent and closely matched Vance's actual appearance. The State introduced expert testimony that suggested a strong link between the orange cap and Vance. Although Vance presented alibi testimony in an attempt to establish that he could not have committed the rape, the weight to be given to such testimony was for the jury to decide. *State v. Otten*, 292 Minn. 493, 195 N.W.2d 590 (1972). The identification and physical evidence overwhelmingly identify Vance as the person who sexually assaulted S.D.

## VII

■ Vance was sentenced to 72 months in prison, an upward departure from the presumptive sentence of 43 months under the guidelines. A court may durationally depart only where the defendant's conduct was more serious than that typically involved in the offense committed. *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). In this case the trial court gave the following reasons for imposing an aggravated sentence:

[U]pward departure is appropriate when * * * the victim was treated with particular cruelty for which the individual offender should be responsible. In this case, defendant transmitted to the victim a venereal disease together with pubic lice. These factors considered with the age of the victim would justify departure. *Kilcoyne v. State*, 344 N.W.2d 394 (Minn.1984).

In addition, the defendant smeared the [victim's] menstral blood onto her body during the sexual assault which seems particularly cruel behavior. This to me indicates that this case is sufficiently dif-

ferent in degree so as to justify a determination by me that the defendant acted with "particular cruelty". *State v. Martinez*, 319 N.W.2d 699 (Minn.1982).

The trial court thus considered factors appropriate to imposing an aggravated sentence (particular cruelty toward the victim and the victim's particular vulnerability due to age, Minn. Sentencing Guidelines §§ II.D.2.b.(2), (1)) and expressly found Vance's conduct sufficiently more serious than that in a typical case.

## VIII

Vance was convicted of two counts of first-degree criminal sexual conduct under two subdivisions of Minn.Stat. § 609.-342. On appeal, both parties agree that Vance may not be convicted under two subdivisions of the same statute for a single act and that this court should vacate one of the two convictions. *See State v. Goodridge*, 352 N.W.2d 384, 389 (Minn. 1984); Minn.Stat. § 609.04 (1984). Because the trial court is most familiar with the facts, we remand for vacation of one of Vance's convictions.

## DECISION

Affirmed in part and remanded for vacation of one of the convictions.