The appellant, Perry Joe Blackmon, was convicted of manslaughter for the shooting death of Michael Bennett, in violation of § 13A-6-3, Code of Alabama 1975. He was sentenced to 16 years in the state penitentiary and was ordered to pay a fine of $5,000, restitution in the amount of $7,120.34, and a $1,000 victim's compensation assessment.
The evidence tended to show that on the evening of September 18, 1988, Christie Rogers called the appellant, her ex-stepfather, to come to her home and pick her up. She stated that her mother and the victim had come home from a party drinking and had gone upstairs to the bedroom and closed the door. Christie told the appellant that she wanted to spend the night with him.
The appellant arrived approximately 30 minutes later. Christie got in the appellant's truck and watched as the appellant got a gun from behind the seat and went inside. Minutes later, the appellant came back outside, jumped in the truck, and threw the gun back behind the seat. As they drove away, the appellant said, "I shot Michael."
The appellant raises four issues on appeal.
 I
The appellant's first contention is that the tape recording of his call for emergency help should not have been played before the jury because, he argues, its prejudicial effect far outweighed its probative value. The following is a transcription of the tape as typed by the Houston County Sheriff's Department:
"Emergency Service. What's the emergency?
"Uh . . . shooting at 122 Timbers Court.
"126 what?
"122 Timbers Court. Hurry . . . paramedics.
"Where's that at?
"Timbers Court. It's on Hartford Highway.
 "Okay. Stay on the line. Don't hang up. Let me get somebody en route. Do not hang up.
"You fucking whore.
"Michael — Joe, what in the hell did you do?
"I shot him.
"Why did you kill him?
 "Cause he — you're a damn whore. That's why, Marsha. I didn't mean to shoot him — by God, but the son-of-a-bitch starting hitting me.
"My God. Why did you shoot him?
 "Cause you're a damn whore, that's why, Marsha. Hello! Well, I'll get sentenced for life, but that's all right, by God. Your daughter called me and was upset.
"Hello.
"Hello.
 "We've got paramedics and ambulance en route. What's your name please?
"Uh — Michael Bennett.
 "All right. Mr. Bennett, are you the one that was shot?
"Yes.
"Where were you shot at?
"In this apartment at 122.
"No. I mean, what part of your body?
"Uh, next to the heart.
"What's your phone number?
"792-0796-2-0926 — please hurry.
 "All right. Did you do the shooting or did someone else shoot you?
"Yes, I did it.
"It was accidental?
"Yes.
 "All right. We've got paramedics and ambulance en route. Is there someone there that can open the door for them?
"Yes. It's open. *Page 1039 
"Okay. We'll have them there in just a moment."
The test of relevancy sanctioned by the Alabama appellate courts has been described as follows: "Under this liberal test, a fact is admissible if it has any probative value, however slight, upon a matter in the case." C. Gamble, McElroy'sAlabama Evidence § 21.01(1) (3d ed. 1977). "Evidence is relevant if it has 'any tendency to throw light upon the matter in issue, even though such light may be weak and falls short of demonstration. . . . Any fact which has causal connection or logical relation to another fact so as to make the other fact either more or less probable, is competent or relevant.'" Mitchell v. State, 473 So.2d 591, 594
(Ala.Cr.App. 1985). However, it is generally recognized that relevant evidence may be excluded where it would serve comparatively little or no purpose except to arouse the passion, prejudice, or sympathy of the jury. C. Gamble,McElroy's Alabama Evidence § 20.01(4) (3d ed. 1977); 1 J. Wigmore, Evidence § 10A (Tillers rev. 1983); Jennings v. State, 513 So.2d 91, 96
(Ala.Cr.App. 1987).
Certainly the language used in the conversation between the appellant and his former wife is somewhat inflammatory. However, we cannot say that it was so prejudicial so as to outweigh the probative value of the tape when listened to in its entirety. Not only is the tape relevant to prove the appellant's intent, which was a material and contested issue at trial, but the tape also supports the defense's theories of provocation and accident. Thus, the trial court correctly received the tape into evidence. See State v. Vance,392 N.W.2d 679 (Minn.App. 1986).
 II
The appellant's second contention is that the trial court erred by refusing to allow the use of a treatise in the cross-examination of an expert witness for the State. More specifically, the trial court refused to allow defense counsel to cross-examine Dr. Paredes from a book obtained from Dr. Paredes, in regard to the distance at which a .22 caliber shell would leave "tattooing" on a victim.
The following is the trial court's statement of its reasoning in support of its ruling:
 "THE COURT: The problem that the Court had — this really was the discovery aspect of it — that it was a substantial item that was not revealed to the State.
 "Of course, the motion — one of the motions was late filed.
 "There was one filed on March 9th; I didn't see a certificate of service, but there was one on the 15th.
 "Yesterday at the conclusion of the day, the Court orally corrected, or ordered the District Attorney to go over to the office of the defense attorneys to receive the discovery that was set out in the State's motion that they would have.
 "I feel a material aspect of the discovery that should have been made. [sic]
"I'm not saying that it's not relevant.
 "I'm saying that under the discovery that was had, it does not — it was not fair to the State.
 "MR. KIRK: I appreciate your position, but I would object to the Court's interpretation that we were offering this as an offense expert. This was not. It was simply to test the credibility of the statements made by Dr. Paredes, and what Mr. Harden is now going to get into.
 "THE COURT: You're saying authority used for the purpose of impeachment of testimony, or without? [sic]
 "MR. KIRK: Yes, sir, and I humbly did not see an order regarding cross-examination; so I was unaware of that, Judge, or certainly Mr. Carter and I would have discussed it.
 "I didn't realize the Court's order asked us to disclose cross examination procedures on credibility.
 "THE COURT: Just so you'll know my thinking: An analogy would be that the State put on Dr. Paredes, or anyone else, and it wouldn't be for impeachment purposes, although we're getting off into evidence, they pulled out an authority *Page 1040 
and started asking him questions out of this, even though they never offered it. That is the problem I had.
 "It's, in effect, evidence coming in if he is asked to agree with the propositions in that authority later offered.
"But, anyway, I'll redeny the motion."
The trial court refused to allow defense counsel to cross-examine Dr. Paredes by using a book obtained from the doctor because of defense counsel's apparent failure to provide the State with the name of the book pursuant to the State's discovery motion. A.R.Crim.P.Temp. 18.5(a) reads, "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, or an order issued pursuant to this rule, the court may . . . prohibit the party from introducing evidence not disclosed. . . ." The trial court apparently felt that this sanction was appropriate, and it was certainly within his sound discretion to impose such a sanction. Musgrave v.State, 555 So.2d 1190 (Ala.Cr.App. 1989). Thus, no error has occurred in this regard.
 III
The appellant's third contention is that the State's closing argument amounts to reversible error. He points to two instances of alleged misconduct to support his assertion.
The following portion of the record reveals what the appellant claims to be the first instance of alleged misconduct:
 "(Mr. Valeska begins last half of closing argument; during the course of which the following occurred:)
 "MR. CARTER: I object to the State telling the jury what the punishment in this case is. If I had gotten up there and talked about punishment he would have had a fit.
 "MR. VALESKA: Judge, they talked about it. They talked about going to the penitentiary, and in criminally negligent homicide you can not go to the penitentiary.
 "THE COURT: I think the jury has a right to know the level of the crime, not the punishment involved.
 "I will overrule the objection, but, of course, gentlemen, do not go into the ranges of punishment, be it misdemeanor or felony."
While it is well established that punishment in noncapital cases is properly left to the discretion of the trial judge and should not be argued to the jury, Fordham v. State,513 So.2d 31 (Ala.Cr.App. 1986), it is not error to make such an argument when it is made in the context of a reply-in-kind comment. Bui v. State, 551 So.2d 1094 (Ala.Cr.App. 1988), aff'd, 551 So.2d 1125 (Ala. 1989).
In Davis v. State, 494 So.2d 851 (Ala.Cr.App. 1986), this court held:
 "Replies in kind are generally permissible. Pittman v. State, 153 Ala. 1, 45 So. 245
(1907); Bates v. State, 468 So.2d 207
(Ala.Cr.App. 1985). Allowing replies in kind rests within the discretion of the trial court, McCullough v. State, 357 So.2d 397
(Ala.Cr.App. 1978), and wide latitude is usually given regarding replies in kind. Richardson v. State, 354 So.2d 1193 (Ala.Cr.App. 1978); Evans v. State, 338 So.2d 1033
(Ala.Cr.App. 1976); Lane v. State, 46 Ala. App. 637, 247 So.2d 679 (1971); Moody v. State, 40 Ala. App. 373, 113 So.2d 787 (1959); Windham v. State, 35 Ala. App. 547, 50 So.2d 288 (1950); Gills v. State, 35 Ala. App. 119, 45 So.2d 44, cert. denied, 253 Ala. 283, 45 So.2d 51 (1950); York v. State, 34 Ala. App. 188, 39 So.2d 694 (1948), cert. denied, 252 Ala. 158, 39 So.2d 697 (1949); Walker v. State, 33 Ala. App. 614, 36 So.2d 117 (1948). 'When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply. What otherwise would have been improper argument by the prosecutor will be seen as harmless.' DeFoor, Prosecutorial Misconduct in Closing Argument, 7 Nova L.J. 443, 469-70 (1982-83)."
494 So.2d at 854-855. In the case at bar, we find the State's comment to be a permissible reply in kind and, consequently, that the trial judge did not abuse his discretion *Page 1041 
in allowing such argument in the presence of the jury.
The second instance which the appellant alleges constitutes error occurred when the State commented on the defense's failure to call Marsha Blackmon to testify. However, the trial judge sustained the appellant's objection to this comment and, therefore, there is no adverse ruling. Ross v. State,555 So.2d 1179 (Ala.Cr.App. 1989).
 IV
The appellant's final contention is that the trial judge erred when he refused the appellant's requested jury charges defining the offense of criminally negligent homicide. However, the judge fully charged the jury on criminally negligent homicide as a lesser included offense as to murder. A trial judge may correctly refuse written requested jury charges if his oral charge covers the same legal principles. Section12-16-13, Code of Alabama 1975; A.R.Crim.P.Temp. 14;Harris v. State, 513 So.2d 79 (Ala.Cr.App. 1987);Bates v. State, 484 So.2d 1206 (Ala.Cr.App. 1986).
Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.