The appellant, Ricky O'Neil, was convicted of two counts of assault in the second degree, violations of § 13A-6-21, Code of Alabama 1975. He was sentenced to nine years' imprisonment on one count and six years' imprisonment on the other.
 I
Initially, the appellant contends that the circuit court erred in denying his motion to dismiss, arguing that there was not sufficient evidence to present the case to the jury.
A person commits assault in the second degree when, "[w]ith intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument." § 13A-6-21(a)(2), Code of Alabama 1975.
The state's evidence tended to show that late in the evening of August 23, 1990, Audrey Patterson, the victim, was driving her two-year-old son Carlton, the other victim, and her boyfriend Dwight Bell to Bell's apartment at 210 Cotton Avenue in Birmingham. As they approached the apartment, they observed that Bell's ex-wife had blocked one entrance of the apartment complex's parking lot with her car. Bell, who had a previous altercation with his ex-wife that night, saw that two cars occupied by several men were in the street near his ex-wife's car. Patterson drove her car around the corner and entered the parking lot through another entrance. When Bell's ex-wife noticed the car, she screamed repeatedly, "There he is!" Bell jumped from the car and ran into his apartment.
Patterson drove slowly around the corner of the parking lot back towards Bell's ex-wife and her companions. When Patterson saw that one of the men was armed, she got out of her car and ran up the short flight of stairs to the nearest apartment, leaving her son in the back seat. When no one responded to her knocking and her screams for help, she collapsed. The appellant then approached her, placed the barrel of a .22 caliber rifle to her head, and asked, "Where is that m_____ f____?"
Patterson began pleading for her life and telling the appellant that her little boy needed her. After a few minutes, the appellant allowed her to return to the car to get her son, but he stayed close behind her with the gun. Once Patterson retrieved her son, she turned around and slowly walked to Bell's apartment with her son in her arms. She opened the storm door to Bell's apartment, and then had to turn sideways in order to open the front door. As she opened the door, Patterson saw the appellant, who had remained a few feet behind her, begin firing his gun. She was hit in the arm by one of the shots, while her son was struck in the hand. Bell's brother pulled Patterson and her son inside, and they all laid on the floor as the appellant fired approximately three more rounds into the apartment before leaving.
Two days later, Ivory Dodson, a Birmingham Police Officer, learned from Bell's ex-wife that the appellant was the only person who had carried a gun that night. Dodson put together a six-picture photographic line-up, and Patterson immediately identified the appellant as the man who had done the shooting. Further, Patterson testified that she had heard several of the people with the appellant on the night of the incident call him by name. She also stated that the parking lot was well-lighted.
After reviewing the facts as recited above, we hold that there was sufficient evidence for this case to be presented to the jury. When reviewing the sufficiency of the evidence, we "must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State, 471 So.2d 485, 489
(Ala.Cr.App. 984), aff'd., 471 So.2d 493 (Ala. 985). See alsoCurry v. State, 601 So.2d 157, 158-159 (Ala.Cr.App. 992). Further, we cannot substitute our judgment for that of the jury. Owens v. State, 597 So.2d 734 (Ala.Cr.App. 992); Marks v.State, 581 So.2d 1182 (Ala.Cr.App. 990). Thus, the *Page 1250 
circuit court did not err in denying the appellant's motion to dismiss.
 II
Next, the appellant argues that his trial counsel was ineffective. More specifically, the appellant contends that his counsel failed to request a jury instruction regarding the defense that counsel relied on at trial, that counsel allowed inadmissible testimony and evidence to be received without objection, and that counsel referred to him by the wrong name on several occasions during trial.
To proceed on a claim of ineffectiveness of counsel, the appellant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced by his counsel's performance. Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690, 104 S.Ct. at 2066; Duren v. State,590 So.2d 360 (Ala.Cr.App. 990), aff'd., 590 So.2d 369 (Ala. 991), cert. denied, ___ U.S. ___, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
Initially, the appellant contends that he was prejudiced by his trial counsel's refusal to request an instruction on mistaken identity. Generally, a "request for jury instructions is a matter of trial strategy and, absent a clear showing of improper or inadequate representation, is to be left to the judgment of counsel." Parker v. State, 510 So.2d 281, 286
(Ala.Cr.App. 987); Haynes v. State, 461 So.2d 869, 874
(Ala.Cr.App. 984). Even though counsel did attempt to prove that the victim's identification of the appellant was mistaken, but failed to request a jury charge on mistaken identity, the appellant's identity was one of the elements that the state was required to prove beyond a reasonable doubt. This requirement was clearly explained to the jury, and the appellant's counsel indicated that she was content with the court's instructions. A charge on mistaken identity would have been cumulative. The judge had the right to refuse such a charge, if offered, and, thus, the failure of the appellant's counsel to request such a charge was not prejudicial. See Blackmon v. State,574 So.2d 1037 (Ala.Cr.App. 990); Rule 21.1, A.R.Crim.P.
The failure of the appellant's counsel to object to certain evidence and testimony is also a matter of trial strategy. In decisions involving trial tactics, the appellant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; Hutchins v.State, 568 So.2d 395, 397 (Ala.Cr.App. 990). Further, "[e]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made." Stringfellow v. State,485 So.2d 1238, 1243 (Ala.Cr.App. 986). See also Hutchins, 568 So.2d at 397.
Even though there were several instances where counsel could have objected, "that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel." Ex parte Lawley,512 So.2d 1370, 1373 (Ala. 987); Hutchins, 568 So.2d at 397. The record reveals that the appellant's counsel conducted a thorough cross-examination of each state witness, called three alibi witnesses for the defense, moved twice for a dismissal of the charges, and moved for a new trial after the verdict. There is no evidence that the appellant was prejudiced by his counsel's trial strategy. See, e.g., Lawley, supra.
Finally, the appellant argues that he was prejudiced by counsel's referring to him as "Ricky Bell" on three occasions. Because two of the principle participants in this case were named Bell (Dwight and his ex-wife), counsel's misstating her client's name was no more than a simple mistake as a result of which the appellant suffered no prejudice. "An accused is not entitled to error-free counsel." Phelps v. State,439 So.2d 727, 735 (Ala.Cr.App. 983). *Page 1251 
After reviewing the facts of this case, we conclude that, in face of the overwhelming evidence against the appellant, his counsel's actions did not affect the outcome of the trial. See, e.g., Mace v. State, 574 So.2d 886 (Ala.Cr.App. 990). See also,Duren, supra; Stringfellow, supra. Thus, the appellant was not denied effective assistance of counsel.
 III
The appellant also contends that the circuit court erred in failing to charge the jury on the lesser included offense of assault in the third degree. This issue, however, has not been preserved for review.
Rule 21.2, A.R.Crim.P. states, in pertinent part:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
At trial, after requesting that the judge charge the jury on assault in the third degree, the appellant made no objection when the court denied his request, nor did he object before the case was submitted to the jury. Further, the appellant signified that he was satisfied after the court finished instructing the jury and after the judge gave the jury requested supplemental instructions. Thus, the appellant is barred from presenting this issue on appeal. See, e.g.,Cook v. State, 574 So.2d 905 (Ala.Cr.App. 990).
 IV
Finally, it has come to our attention that the appellant was incorrectly sentenced. The appellant was sentenced to nine years' imprisonment on one count of assault in the second degree and six years' imprisonment on the other. We recognize that assault in the second degree is a Class C felony, and is thus punishable by imprisonment for "not more than 10 years or less than 1 year and 1 day." § 13A-5-6(a)(3), Code of Alabama 1975. However, when it is proven that the accused used a firearm or deadly weapon in committing a Class C felony, then he must be sentenced to no less than 10 years imprisonment. §13A-5-6(a)(5), Code of Alabama 1975. See also Ex parte McCree,554 So.2d 336 (Ala. 988); Colburn v. State, 494 So.2d 120
(Ala.Cr.App. 985); Smith v. State, 447 So.2d 1327
(Ala.Cr.App. 983), aff'd., 447 So.2d 1334 (Ala. 984).
In this case, the appellant was found guilty of two counts of intentionally causing physical injury to Audrey and Carlton Patterson by means of a deadly weapon or dangerous instrument (a .22 caliber rifle). Thus, under § 13A-5-6(a)(5), he should have been sentenced to at least 10 years' imprisonment on each count. McCree, supra; Colburn, supra.
We affirm the appellant's convictions for assault in the second degree. However, this cause is remanded for resentencing. See, e.g., Ball v. State, 592 So.2d 1071, aff'd. on remand, 601 So.2d 1135 (Ala.Cr.App. 992); Moynes v. State,568 So.2d 392 (Ala.Cr.App. 990), cert. den'd ___ U.S. ___,112 S.Ct. 385, 116 L.Ed.2d 335 (1991). The circuit court is directed to impose a sentence of at least 10 years' imprisonment upon the appellant for each of the two counts of assault in the second degree upon which he was convicted. Due return should be filed with this court within 30 days.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.